757 N.W.2d 124 (2008)
17 Neb. App. 138
Kenneth Ross METCALF, Appellant,
v.
Rita Jo METCALF, Appellee.
No. A-07-1346.
Court of Appeals of Nebraska.
October 21, 2008.
*125 Paul E. Galter, of Butler, Galter, O'Brien & Boehm, Lincoln, for appellant.
Kristina M. Teague and Donald H. Bowman, Lincoln, of Bowman & Krieger, for appellee.
IRWIN, MOORE, and CASSEL, Judges.
MOORE, Judge.

INTRODUCTION
Kenneth Ross Metcalf and Rita Jo Metcalf were divorced in 1999. Kenneth appeals from an order of the district court for Lancaster County which dismissed his complaint to modify the alimony award found in the decree of dissolution. Because we find no abuse of discretion by the district court, we affirm. Pursuant to this court's authority under Neb. Ct. R.App. P. § 2-111(B)(1), this case was ordered submitted without oral argument.

BACKGROUND
The district court entered a decree dissolving Kenneth and Rita's marriage on March 18, 1999. Among other things, the court ordered Kenneth to make alimony payments to Rita of $2,000 per month for a period of 120 months starting April 1.
On March 31, 2005, Kenneth filed a complaint seeking to modify the decree. Specifically, Kenneth requested that his alimony obligation be terminated or reduced *126 because of his reduced income and Rita's increased income. Following a hearing on December 20, the district court entered an order on January 26, 2006, dismissing the complaint and finding that Kenneth "has failed to prove by the greater weight of evidence that a material and substantial change in circumstances sufficient to modify or revoke alimony occurred." Kenneth did not appeal the January 26 order.
On March 15, 2006, Kenneth filed another complaint seeking to terminate or reduce his alimony obligation. Shortly thereafter, Kenneth filed a motion seeking the recusal of the trial judge who heard his previous modification complaint because of the "`[c]ourt's previous involvement with [Kenneth] in criminal or contempt proceedings.'" The judge who heard the original modification recused himself, and the case was assigned to another district court judge.
An evidentiary hearing was held before the district court in the current modification proceedings on October 15, 2007. The record shows that Kenneth has worked as a chiropractic physician for 23 years. Kenneth is currently married, and his wife is employed as a nurse. Kenneth testified with respect to his current health, indicating that he has issues with "arthritic changes" in his knees and hands that limit him to a degree in his work as a chiropractor and that he has recently experienced problems with dizziness. While Kenneth had health insurance at the time of the divorce in 1999, he did not have health insurance at the time of the second modification hearing because he does not have funds to pay for insurance.
Before becoming a chiropractor, Kenneth was a licensed funeral director and embalmer. At the time of the hearing, Kenneth had investigated employment with three local funeral firms because of the diminishing income in his current profession. Kenneth had hoped to be able to find employment within the limitations of his current physical issues, but he was unable to find employment with a funeral firm that would eliminate the need for lifting and carrying associated with that business.
The district court took judicial notice of the divorce decree, which showed that the divorce judge attributed to Kenneth a total annual income of $98,532 for child support purposes. The district court also took judicial notice of certain exhibits which were received into evidence at the previous modification hearing. One of these exhibits shows that Kenneth's average yearly income for 1996 through 2004 was $112,703 ($114,918 in 1996, $98,533 in 1997, $95,000 in 1998, $99,787 in 1999, $140,981 in 2001, $159,091 in 2002, $44,070 in 2003, and $149,244 in 2004; no income for 2000 was shown on the exhibit). Also judicially noticed were Kenneth's 2004 income tax return, showing income of $149,244, and a financial statement submitted by Kenneth to his bank dated May 24, 2005, wherein Kenneth stated that his income was $80,000.
Kenneth's 2005 and 2006 income tax returns show that his net income from self-employment was $50,047 in 2005 and $50,293 in 2006. Kenneth testified that he incurred approximately $20,000 in unpaid business debts as part of his 2005 expenses, that he did not have the money to pay the debts, and that had he been able to pay those debts, he would have shown less income for that tax year. The debts were ultimately discharged in bankruptcy. Kenneth also discovered that an employee made billing errors in both 2004 and 2005. Kenneth's computer showed that the billings were sent when they were not; so, his 2006 income includes money that was actually earned in 2004 and 2005 as a result of finally sending out proper billings. *127 Kenneth estimated that half of his earned income shown for 2006 was earned in 2004 and 2005. Kenneth discovered the billing problem around the time he commenced the present modification action. Kenneth testified that his net income at the time of the second modification hearing was about $3,000 a month.
Kenneth testified about certain events which have occurred since the December 20, 2005, hearing. Kenneth has filed a chapter 7 bankruptcy petition and received a discharge in bankruptcy. However, Kenneth has debt to the Internal Revenue Service, which debt was not discharged in the bankruptcy. Kenneth owes the Internal Revenue Service $21,000 and is making monthly payments of $250 on that debt. Because the lending institution holding a mortgage against Kenneth's home initiated foreclosure proceedings, Kenneth deeded the home back to the lender in lieu of foreclosure. Kenneth had a full-time employee beginning in 2004, but he had to eliminate the position in February 2006. Kenneth testified that he has continued to experience a gradual decline in new patients and services rendered and that while the percentage of his collections has stayed about the same, the total dollar amount of collections has continued to decrease. Kenneth previously had a retirement account of approximately $35,000, but he cashed it in incrementally starting in 2003 in an attempt to prevent the bankruptcy. At the time of the second modification hearing, Kenneth did not have any stocks, bonds, or other investments.
Rita owned a beauty salon at the time the parties were divorced in 1999. Subsequent to the divorce, Rita became the owner of a dry cleaning business. In 2005, Rita and her son also opened a coffee shop, and they have since opened a second coffee shop. Since the parties' divorce, Rita and her son acquired some real estate for investment purposes. The cost of the land was $195,000. Rita refinanced her home a few years before the second modification hearing to obtain part of the money for the land purchase, borrowing $110,000 against her house at that time.
The divorce decree attributed a total annual income of $16,044 to Rita for child support purposes. Exhibits received into evidence at the prior modification hearing and judicially noticed by the court in the present proceeding included Rita's income tax returns for 2003 and 2004, which show income of $39,267 and $64,708, respectively, excluding the $24,000 in alimony received by Rita in each of those years. Rita's net income in 2005 was $9,408. In 2006, Rita suffered a net loss of $37,867, and in the first 8 months of 2007, her net income was $10,708. To meet her monthly living expenses of $3,633, Rita cashed in her IRA in the amount of $23,800.
On November 28, 2007, the district court entered an order dismissing Kenneth's complaint to modify the decree. The court determined that since Kenneth had failed to appeal from the January 26, 2006, order denying his previous request for modification, Kenneth was required to show that a material change of circumstances had occurred subsequent to January 26. The court noted that the evidence showed that Kenneth's income was about the same as at the time of the previous modification. The court found it "interesting that the claim of a change of circumstances occurred in about a two or three month period." The court observed that Kenneth's evidence was "substantially his own testimony with a lack of substantive evidence to corroborate his opinions" and found the evidence insufficient to show a material change in circumstances. Kenneth subsequently perfected his appeal to this court.

*128 ASSIGNMENTS OF ERROR
Kenneth asserts that the district court erred in (1) concluding that any material change in circumstances must have occurred since the date of the last of the last modification hearing and (2) failing to reduce or terminate his alimony obligation.

STANDARD OF REVIEW
[1, 2] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. Schwartz v. Schwartz, 275 Neb. 492, 747 N.W.2d 400 (2008). A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. Simpson v. Simpson, 275 Neb. 152, 744 N.W.2d 710 (2008).

ANALYSIS
[3-6] Pursuant to Neb.Rev.Stat. § 42-365 (Reissue 2004), alimony orders may be modified or revoked for good cause shown. Good cause means a material and substantial change in circumstances and depends on the circumstances of each case. Simpson v. Simpson, supra. To determine whether there has been a material and substantial change in circumstances warranting modification of a divorce decree, a trial court should compare the financial circumstances of the parties at the time of the divorce decree, or last modification of the decree, with their circumstances at the time the modification at issue was sought. Id. The moving party has the burden of demonstrating a material and substantial change in circumstances which would justify the modification of an alimony award. Id.
In this case, we must first determine whether the district court reviewed the correct time period in making its determination that no material change in circumstances occurred. Second, if the court applied the correct time period in its review, we must determine whether the court was correct in finding that no material change in circumstances occurred.

Correct Time Period Reviewed.
The district court found that Kenneth's change in circumstances, if any, must have occurred since the January 26, 2006, order entered in the previous modification proceedings. Kenneth argues that where a prior attempt to modify resulted in a denial, the court should look to the original decree and not the last order of denial in determining whether there has been a material change in circumstances sufficient to justify modification. Kenneth cites to no case law to support this proposition, and in fact, we believe that the practice in Nebraska is contrary to Kenneth's argument.
[7] The Nebraska Supreme Court has held that to determine whether there has been a material and substantial change in circumstances warranting modification of a divorce decree, a trial court should compare the financial circumstances of the parties at the time of the divorce decree, or last modification of the decree, with the circumstances at the time the modification at issue was sought. See, e.g., Simpson v. Simpson, supra; Finney v. Finney, 273 Neb. 436, 730 N.W.2d 351 (2007). In Simpson v. Simpson, supra, the former wife sought, on two occasions, to increase her former husband's alimony from that ordered in the decree. The first modification proceeding resulted in a denial of the requested increase in alimony. In the second modification proceeding, the Supreme Court analyzed whether a substantial change in circumstances occurred since the last modification proceeding and ultimately *129 affirmed the denial of the request for an increase in alimony.
[8] We believe that limiting the review to evidence occurring since the last modification proceeding, even if said proceeding resulted in a finding that no material change in circumstances had occurred since the entry of the decree, is sound judicial policy and consistent with the principles of collateral estoppel. Under the doctrine of collateral estoppel, also known as issue preclusion, an issue of ultimate fact that was determined by a valid and final judgment cannot be litigated again between the same parties or their privities in any future litigation. Amanda C. v. Case, 275 Neb. 757, 749 N.W.2d 429 (2008). As applied in this case, the issue of whether a change in circumstances occurred between the time of the entry of the decree and the modification proceeding which resulted in the January 26, 2006, order has been fully litigated between the same parties. This order was a final judgment on the issue of a change in circumstances up to the time of the hearing resulting in the January 26 order, which judgment was not appealed.
We conclude that the district court did not err in limiting its review to whether a material change in circumstances had occurred since the last modification proceeding which culminated in the January 26, 2006, order.

No Material Change in Circumstances.
We have examined the evidence presented at the second modification hearing and have compared the financial circumstances of the parties at the time of the first modification proceedings with their circumstances at the time of the current modification proceedings. We agree with the district court's conclusion that Kenneth's income is about the same as it was at the time of the prior modification proceedings and that Kenneth did not meet his burden of proving a material change of circumstances in the requisite time period. Because the district court did not abuse its discretion in finding no material change in circumstances, we affirm the court's determination in that regard.

CONCLUSION
The district court did not err in concluding that any material change in circumstances must have occurred since the date of the last modification hearing and did not abuse its discretion in failing to reduce or terminate Kenneth's alimony obligation.
AFFIRMED.
IRWIN, Judge, dissenting.
I dissent from the majority's conclusion that any alleged material change in circumstances for modifying Kenneth's alimony obligation has to have occurred after a previous unsuccessful attempt to modify the original dissolution decree. I believe the more reasoned and defensible reading of Nebraska jurisprudence is that the material change in circumstances must have occurred since the time of the original decree or the most recent successful modification of the decree.
Initially, I note that this appears to be an issue of first impression in Nebraska. The parties have cited to no authority, and the majority provides none, where the issue of whether a prior unsuccessful application to modify "starts the clock over" was specifically raised by the parties and addressed by the court. Such was not the case in either of the two published opinions in Nebraska that contain the statement that
[t]o determine whether there has been a material and substantial change in circumstances warranting a modification of a divorce decree, a trial court should compare the financial circumstances of *130 the parties at the time of the divorce decree, or last modification of the decree, with their circumstances at the time the modification at issue was sought.
Simpson v. Simpson, 275 Neb. 152, 158, 744 N.W.2d 710, 715 (2008). Accord Finney v. Finney, 273 Neb. 436, 730 N.W.2d 351 (2007).
I believe that the majority is misreading and misapplying the relevant proposition of law to the facts of the present case, because the plain language of the proposition suggests an outcome contrary to that set forth by the majority, because the authority cited by the majority in support of its application does not support such an outcome, and because the majority's application sets an untenable precedent for future cases. Additionally, I do not believe that collateral estoppel has bearing on this issue or supports the majority's conclusion.
First, as noted above, the relevant proposition of law, first espoused in this form by the Nebraska Supreme Court in 2007, indicates that the relevant time period for consideration is the time since the divorce decree, "or last modification of the decree." See, Simpson v. Simpson, supra; Finney v. Finney, supra. A plain reading of this proposition indicates that, to "start the clock" over in terms of a material change in circumstances, there must actually be a "last modification of the decree." In the present case, there was no prior modification, because Kenneth's prior application was denied. The plain meaning of "last modification" suggests that only a prior successful modification should be relevant.
The issue in a modification proceeding is whether the present circumstances are substantially and materially different than they were when the order sought to be modified was entered. Kenneth is currently paying alimony based upon the circumstances as they existed in 1999, and the focus should be on whether the present circumstances are substantially and materially different than they were when the court established Kenneth's alimony obligation, not whether Kenneth made the unfortunate mistake of seeking modification "too soon" and thus has to establish an even greater change in circumstances.
Second, the authority cited by the majority in support of its conclusion that a prior unsuccessful modification should have the effect of starting the clock over on the applicable time period does not support such an outcome. Although the majority accurately notes that the applicant in Simpson v. Simpson, supra, had twice sought to modify her husband's alimony obligation and had been unsuccessful in the first attempt, and although the Nebraska Supreme Court did state the above proposition of law and analyze whether there had been a material change in circumstances since the previous "attempt," the application and conclusion in Simpson is not as easily made to the present case as the majority suggests.
In Simpson v. Simpson, supra, the Nebraska Supreme Court never specifically discussed or analyzed whether the proposed material change in circumstances should be limited only to the time since the previous modification proceeding. In fact, in the previous modification proceeding, the court actually did modify the husband's child support obligation so there was, in a sense, a successful previous modification, albeit not on the alimony issue. More importantly, the Supreme Court's conclusion that a material change in circumstances had not been shown was not premised upon any problem with the "timing" of the alleged material change but upon the fact that the alleged material change was due to the fault or voluntary wastage or dissipation of the applicant's talents or assets. *131 This was true regardless of whether the time period was actually to be limited to the time since the prior unsuccessful attempt to modify alimony.
Finney v. Finney, 273 Neb. 436, 730 N.W.2d 351 (2007), is even more starkly distinguishable and inapposite to the majority's application in the present case. In Finney, there had not even been a prior attempt to modify, successful or unsuccessful. Rather, the only intervening proceeding from the time of the original decree was the direct appeal from the original decree and the appellate decision thereon. Finney does not, explicitly or implicitly, support the outcome reached by the majority in the present case.
The outcome reached by the majority in the present case sets a dangerous and untenable precedent. By making the focus be the time since a previous attempted modification, the majority has essentially indicated that parties will be penalized for filing applications to modify that prove to be unsuccessful. For example, assume that Kenneth's decrease in income since the time of the dissolution decree and Rita's increase in income since that time would otherwise be a sufficient substantial and material change in circumstances to warrant modification. By focusing on the time since a previous unsuccessful attempt to modify, the majority has penalized Kenneth by forcing him to continue paying alimony based on circumstances that are admittedly substantially different, while a litigant in another case who had experienced the exact same change in circumstances but not filed an intervening application to modify would be afforded relief. And, in addition, Kenneth's clock will again start over now; before Kenneth will be entitled to any relief, he will have to demonstrate a substantial and material change in circumstances something akin to thrice over what the litigant who was not unfortunate enough to have asked "too early" would be required to show.
In addition, because the majority has read the term "prior modification" to not actually require a modification but only to require a request for modification, it is arguable that even an application that is filed but dismissed before a ruling on the merits would have the effect of starting the applicant's clock over again.
Finally, I believe the majority's reliance on the doctrine of collateral estoppel to justify its outcome in the present case is misplaced. The doctrine of collateral estoppel, or issue preclusion, applies when an ultimate fact has been determined by a final judgment with the result that the issue cannot be litigated again between the same parties in a future lawsuit. See Amanda C. v. Case, 275 Neb. 757, 749 N.W.2d 429 (2008). I agree with the majority that the issue of whether a material change in circumstances occurred between the time of the original decree and the modification proceeding which resulted in the January 26, 2006, order has been fully litigated and cannot be litigated again. That issue, however, is not the issue being raised by Kenneth at this time. The issue being raised by Kenneth at this time is whether there has been a material change in circumstances between the time of the original decree and the present action, which is not the issue that was litigated and resolved in 2006.
The majority's use of collateral estoppel in this fashion would lead to absurd results in a variety of cases. For example, assume a case in which a party claims title through adverse possession, which requires the adverse possessor to have been in adverse possession for a statutory period of 10 years. See Madson v. TBT Ltd. Liability Co., 12 Neb.App. 773, 686 N.W.2d 85 (2004). Under the majority's application of collateral estoppel, a party *132 who filed his adverse possession claim after only 9 years and was unsuccessful would have to start all over on his 10 years and wait until he had adversely possessed for a total of 19 years before again requesting title to the land.
Kenneth previously sought a modification of his alimony obligation and was unsuccessful. In the present action, the question should be whether the present circumstances are substantially and materially different than they were at the time the present alimony obligation was entered. Such is consistent with the proposition that we should look to the original decree or prior modification as a basis for comparing the present circumstances, such is not inconsistent with existing Nebraska case law, and such is a more defensible and tenable precedent for future cases. Accordingly, I dissent from the majority's conclusion in this case.