769 N.W.2d 386 (2009)
278 Neb. 258
Kenneth Ross METCALF, appellant,
v.
Rita Jo METCALF, appellee.
No. S-07-1346.
Supreme Court of Nebraska.
August 7, 2009.
*388 Paul E. Galter, of Butler, Galter, O'Brien & Boehm, Lincoln, for appellant.
Kristina M. Teague and Donald H. Bowman, of Bowman & Krieger, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, and McCORMACK, JJ.
McCORMACK, J.

NATURE OF CASE
Kenneth Ross Metcalf filed a complaint to modify, seeking a reduction in his alimony obligation. The district court denied his complaint, and a few months later, Kenneth filed a second complaint to modify, again seeking a reduction in his alimony obligation. The district court denied the second complaint, concluding that since the denial of Kenneth's first complaint, he failed to show that there had been a material change in circumstances warranting a reduction in his alimony. Kenneth appealed, and the Nebraska Court of Appeals affirmed. We granted Kenneth's petition for further review.

BACKGROUND
Kenneth and Rita Jo Metcalf were divorced in 1999, and in the decree of dissolution entered on March 18, 1999, the district court ordered Kenneth to pay Rita alimony of $2,000 per month for a period of 120 months beginning April 1. In the original dissolution decree, Kenneth's monthly gross income was determined to be $8,211 per month, or $98,532 per year. Rita's income was determined to be $1,337 per month, or $16,044 per year.
On March 31, 2005, Kenneth filed a complaint seeking a reduction of his alimony obligation, alleging that since 1999, his income decreased and Rita's income increased. The court held a hearing on the matter on December 20, 2005, and on January 26, 2006, the court entered an order denying modification. The court concluded that Kenneth failed to prove a material and substantial change in circumstances had occurred to warrant modification. Kenneth did not appeal this order, but instead, on March 15, he filed a second complaint for modification of alimony.
The district court held an evidentiary hearing regarding Kenneth's second complaint to modify alimony. Rita filed a motion in limine asking the court to exclude any evidence presented at the first modification hearing that would show that there had been a material change in circumstances warranting a reduction in alimony. Rita asserted that any such evidence was barred by collateral estoppel. The court limited the evidence at the second hearing, allowing only evidence of changes which occurred after December 20, 2005, the date the first hearing was held.
An evidentiary hearing was held before the district court in the current modification proceedings on October 15, 2007. Kenneth has worked as a chiropractic physician *389 for 23 years. Kenneth is currently married, and his wife is employed as a nurse. Kenneth testified with respect to his current health, indicating that he has issues with "arthritic changes" in his knees and hands which limit him to a degree in his work as a chiropractor and that he has recently experienced problems with dizziness. While Kenneth had health insurance at the time of the divorce in 1999, he did not have health insurance at the time of the second modification hearing, because he does not have funds to pay for insurance.
Before becoming a chiropractor, Kenneth was a licensed funeral director and embalmer. At the time of the second modification hearing, Kenneth had investigated other employment with three local funeral firms because of the diminishing income in his current profession. Kenneth hoped to find employment within the limitations of his current physical issues, but he has not been able to find employment with a funeral firm that would eliminate the need for lifting and carrying associated with that business.
At the second modification hearing, the court took judicial notice of the original divorce decree and certain other exhibits, which were received into evidence at the first modification hearing. These exhibits show that Kenneth's average yearly income for 1996 through 2004 was $112,703 ($114,918 in 1996, $98,533 in 1997, $95,000 in 1998, $99,787 in 1999, $140,981 in 2001, $159,091 in 2002, $44,070 in 2003, and $149,244 in 2004; no income for 2000 was shown on the exhibit). The court also took judicial notice of Kenneth's 2004 tax return, showing income of $149,244, and a financial statement Kenneth submitted to his bank dated May 24, 2005, which showed that Kenneth's income was $80,000.
At the second modification hearing, Kenneth introduced his 2005 and 2006 tax returns into evidence. The returns show that his net income from self-employment was $50,047 in 2005 and $50,293 in 2006. Kenneth admitted that his 2005 and 2006 tax returns did not show a change in his income, but Kenneth testified that he discovered some accounting errors which affected his 2005 income and expense figures.
According to Kenneth, his 2005 income was less than what his income tax return showed, because he incurred $20,000 in unpaid business debts in 2005. Kenneth testified that he did not have the money to pay those expenses but had he been able to, his income would have been less than what his 2005 return showed. Kenneth, however, was unable to produce any receipts proving that such unpaid debts existed. These debts were ultimately discharged in bankruptcy.
Kenneth also testified that his employee made a billing error in 2004 and 2005, the result of which was that Kenneth's computer erroneously showed that billings were sent when in fact they were not. According to Kenneth, his 2006 income included money not earned in 2006 but received as a result of sending out bills that should have been sent out in 2004 or 2005. Kenneth testified that approximately half of his 2006 income was income that was actually earned in 2004 or 2005.
Kenneth also explained how his financial state had changed since the first modification proceeding. Kenneth had a retirement account of approximately $35,000, but he cashed it in incrementally starting in 2003, attempting to avoid bankruptcy. Kenneth eventually filed a chapter 7 bankruptcy petition and received a discharge. However, Kenneth still owes $21,000 to the Internal Revenue Service that was not *390 discharged, and he is making payments of $250 per month to pay off that debt.
Additionally, Kenneth deeded his home back to the mortgage lender after foreclosure proceedings were initiated, and he gave back the 2004 Dodge Durango he was leasing. He now drives a 1996 Toyota Camry with approximately 140,000 miles on it. Because of Kenneth's alleged decrease in income, Kenneth no longer has health insurance. Kenneth also had to eliminate his full-time employee position in 2006. Further, Kenneth testified that he has continued to experience a gradual decline in new patients and services rendered, but Kenneth provided no explanation as to why he was losing patients. At the time of the second hearing, Kenneth testified that his net income was about $3,000 per month.
Kenneth was also questioned about his criminal history. In 1995, Kenneth was found guilty of debauching a minor, a Class I misdemeanor. Rita argues that if Kenneth's income has decreased, it is likely a result of his criminal history, which is a result of his own wrongdoing, and that therefore, modification is not warranted.
At the second modification hearing, Rita testified about her financial situation, and the court took judicial notice of Rita's income tax returns for 2003 and 2004. Her tax returns show income of $39,267 for 2003 and $64,708 for 2004. These amounts do not include the $24,000 in alimony Rita received in each of those years. Rita's net income in 2005 was $9,408, and in 2006, Rita suffered a net loss of $37,867. In the first 8 months of 2007, Rita's net income was $10,708. Rita cashed in her IRA in the amount of $23,800 to meet her monthly living expenses of $3,633.
At the time of the parties' divorce, Rita owned a beauty salon. Thereafter, Rita owned a drycleaning business, and in 2005, she and her son opened a coffee shop. Since then, they opened another coffee shop. Rita and her son also acquired some investment property which cost $195,000. Rita testified that she relied upon her alimony award when she purchased the investment property and that without the alimony, she would not be able to make payments of both interest and principal. A few years before the second modification hearing, Rita refinanced her home to obtain part of the money for the land purchase, borrowing $110,000 against her house.
After considering the evidence, the court entered an order dismissing Kenneth's second complaint to modify alimony. The court concluded that because Kenneth failed to appeal the January 2006 order, which dismissed his first complaint for modification, Kenneth was required to show a material change in circumstances since January 26, 2006. The court also concluded that Kenneth failed to show a material change in circumstances in the 2 to 3 months between January and March 2006. Kenneth appealed, and the Court of Appeals affirmed, concluding that the district court was correct to require Kenneth to show a material change in circumstances since the time his prior request for modification was denied.[1]
The Court of Appeals concluded that the district court was correct to require Kenneth to show a material change in circumstances since the time his prior request for modification was denied. To determine whether there has been a material and substantial change in circumstances warranting modification of a divorce decree, a trial court should compare the financial circumstances of the parties at the time of the divorce decree, or last *391 modification of the decree, with their circumstances at the time the modification at issue was sought.[2] The Court of Appeals, in denying Kenneth's second request for modification, relied in part on this court's decision in Simpson v. Simpson.[3] In Simpson, the former wife sought, on two occasions, to increase her former husband's alimony from that ordered in the decree. Her first attempt was unsuccessful. In the second modification proceeding, the trial court considered whether there had been a change in circumstances since the denial of the first modification attempt. We affirmed.
In this case, the Court of Appeals' dissenting opinion pointed out that the issue of whether there must be a change since the most recent attempted modification was not specifically addressed by this court in Simpson. Moreover, the dissenting opinion stated that a party should be required to show a material change in circumstances since the time of the original decree or since the most recent successful modification of the decree.
The Court of Appeals also relied on principles of collateral estoppel. The Court of Appeals noted that under the doctrine of collateral estoppel, when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot be relitigated between the same parties or their privities in any future litigation. The dissenting opinion disagreed, stating that collateral estoppel did not apply. The dissent stated: "The issue being raised by Kenneth at this time is whether there has been a material change in circumstances between the time of the original decree and the present action, which is not the issue that was litigated and resolved in 2006."[4] Ultimately, the Court of Appeals concluded that the district court did not err in limiting its review to whether a material change in circumstances had occurred since the last modification proceeding.

ASSIGNMENTS OF ERROR
Kenneth argues, restated and consolidated, that the Court of Appeals erred in concluding (1) that there had not been a change in circumstances warranting a reduction in his alimony obligation and (2) that he needed to show a material change in circumstances since January 26, 2006, rather than a material change in circumstances since March 18, 1999, when the decree of dissolution was entered.

STANDARD OF REVIEW
Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court.[5]

ANALYSIS
Alimony orders may be modified or revoked for good cause shown.[6] Good cause means a material and substantial change in circumstances and depends upon the circumstances of each case.[7] Good cause is demonstrated by a material change in circumstances, but any changes *392 in circumstances which were within the contemplation of the parties at the time of the decree, or that were accomplished by the mere passage of time, do not justify a change or modification of an alimony order.[8] The moving party has the burden of demonstrating a material and substantial change in circumstances which would justify the modification of an alimony award.[9]
To determine whether there has been a material and substantial change in circumstances warranting modification of a divorce decree, a trial court should compare the financial circumstances of the parties at the time of the divorce decree, or last modification of the decree, with their circumstances at the time the modification at issue was sought.[10] However, there is some confusion about the time period that must be considered to determine whether there has been a change in circumstances in cases where there has been a previous attempt to modify alimony prior to the current motion. This is an issue of first impression for this court.
We determine that in cases where there has been a previous attempt to modify support, the court must first consider whether circumstances have changed since the most recent request for modification. But when considering whether there has been a material and substantial change in circumstances justifying modification, the court will consider the change in circumstances since the date of the last order establishing or modifying alimony.[11] In other words, a judgment for alimony may be modified only upon a showing of facts or circumstances that have changed since the last order granting or denying modification was entered. But once some change has been established since the last request, the analysis focuses on the change in circumstances since alimony was originally awarded or last modified. We adopt this rule because it recognizes the force of res judicata; modification will be considered only when there has been a change in circumstances since the last request for modification. But if there has been no change, modification is not justified, because the request is essentially the same as the last request.[12]
In this case, the Court of Appeals' majority concluded that the issue of whether a change in circumstances occurred between the time of the entry of the decree and the modification proceeding was fully litigated. And as such, the Court of Appeals' majority held that the district court did not err in limiting its review to whether a material change in circumstances had occurred since the last modification proceeding. We agree with the Court of Appeals' majority that the district court was correct by limiting its review to only the change in circumstances occurring since the first modification proceeding. However, any change in circumstances occurring since the first modification proceeding should have been compared to the original decree when determining whether the change in circumstances was a material and substantial change warranting modification.
Any changes in Kenneth's circumstances that occurred prior to the first modification proceeding are settled, and the doctrine *393 of res judicata prevents the district court from considering any change based on those circumstances.[13] But the initial alimony award was not affected by the first modification proceeding, and Kenneth is currently paying alimony based upon the circumstances as they existed in 1999. As such, the change in circumstances, if any, occurring after the first modification proceeding must be compared to the parties' financial circumstances at the time of the initial divorce decree to determine whether there has been a material and substantial change in circumstances warranting a modification of Kenneth's alimony obligation.
In this case, the district court and the Court of Appeals concluded that the parties' circumstances were about the same as they were at the first modification proceeding, and thus, the Court of Appeals concluded that Kenneth failed to establish that there was any change in circumstances from the first modification to the current modification. The establishment of changed circumstances is necessary in order to modify alimony. Our de novo review of the record reveals that the district court's determination that Kenneth failed to show that his circumstances changed from the previous modification to the current modification proceeding was not an abuse of discretion. As such, we conclude that because nothing has changed since the first modification proceeding, Kenneth's motion to modify alimony was properly denied.

CONCLUSION
We conclude that when there has been one or more previous modification proceedings, the court should first determine whether there has been any change in circumstances arising after the most recent modification proceeding. If circumstances have changed since the time of the most recent request for modification, then the court should consider the change in circumstances since the original decree or order affecting alimony to determine whether there has been a material and substantial change. If there has been no change between the most recent modification request and the current request, the current modification is barred by res judicata. Based on our review of the record, Kenneth has failed to prove that the circumstances have changed since the most recent modification request. Since the circumstances are the same as they were at the prior modification proceeding, Kenneth's request is barred by res judicata. For different reasons from those stated by the Court of Appeals, we conclude that Kenneth's application to modify alimony was properly denied, and we affirm the judgment of the Court of Appeals to that effect.
AFFIRMED.
MILLER-LERMAN, J., participating on briefs.
GERRARD, J., not participating.
NOTES
[1] Metcalf v. Metcalf, 17 Neb.App. 138, 757 N.W.2d 124 (2008).
[2] Finney v. Finney, 273 Neb. 436, 730 N.W.2d 351 (2007).
[3] Simpson v. Simpson, 275 Neb. 152, 744 N.W.2d 710 (2008).
[4] Metcalf v. Metcalf, supra note 1, 17 Neb. App. at 148, 757 N.W.2d at 131.
[5] Finney v. Finney, supra note 2.
[6] Id.; Neb.Rev.Stat. § 42-365 (Reissue 2008).
[7] Finney v. Finney, supra note 2.
[8] Marcovitz v. Rogers, 276 Neb. 199, 752 N.W.2d 605 (2008).
[9] Finney v. Finney, supra note 2.
[10] Simpson v. Simpson, supra note 3; Finney v. Finney, supra note 2.
[11] See, Ebach v. Ebach, 757 N.W.2d 34 (N.D. 2008); Demartino v. Demartino, 79 Conn.App. 488, 830 A.2d 394 (2003).
[12] See Bowe v. Bowe, 557 So.2d 793 (Miss. 1990).
[13] See Walters v. Walters, 177 Neb. 731, 131 N.W.2d 166 (1964). See, also, Dunlap v. Dunlap, 145 Neb. 735, 18 N.W.2d 51 (1945).