IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

GAGNE V. GAGNE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

PAULA D. GAGNE, NOW KNOWN AS PAULA D. MUYSKENS, APPELLEE,

V.

ROBERT J. GAGNE, JR., APPELLANT.

Filed December 26, 2017.    No. A-16-907.

Appeal from the District Court for Douglas County: JAMES T. GLEASON, Judge. Affirmed.

Michael J. Wilson, of Schaefer Shapiro, L.L.P., for appellant.

Philip B. Katz, of Marks, Clare & Richards, L.L.C., for appellee.

PIRTLE, RIEDMANN, and ARTERBURN, Judges.

PIRTLE, Judge.

### INTRODUCTION

Robert J. Gagne, Jr., appeals from an order of the district court for Douglas County denying his request to modify the parties' dissolution decree, specifically the alimony awarded to Paula D. Gagne. Based on the reasons that follow, we affirm.

### BACKGROUND

On September 2, 2014, following a settlement of all issues by the parties, the trial court entered a decree dissolving the parties' marriage. Robert was awarded the parties' residence in Nebraska subject to the mortgage thereon, and Paula was awarded the parties' second home in Texas subject to the mortgage thereon. As to the overall division of property, the parties divided the marital estate nearly equally with each party receiving a net marital estate of approximately $375,000. Pursuant to the decree, Robert agreed to pay Paula alimony for 9 years. Specifically, the

decree directed Robert to pay $3,250 per month in alimony for 36 months; $2,500 per month for 24 months; and $1,750 for 48 months.

On October 20, 2014, Paula paid off the entire mortgage on the Texas residence, which at the time was approximately $127,000. To pay off the mortgage, Paula used approximately $81,000 in assets awarded to her under the decree, $15,000 given to her by her mother in June 2014, and approximately $36,000 given to her from her significant other, Albert Dew.

On July 14, 2015, Robert filed a complaint to modify decree seeking a reduction or elimination of the alimony he agreed to pay in the decree. Robert's request for modification was based on the fact that Paula had paid off the mortgage on the Texas home, which allegedly reduced her monthly expenses by $800. Robert alleged that Paula had failed to disclose funds from her mother and Dew when the divorce was pending, which she then used to pay off the mortgage on her home shortly after the divorce.

Trial on the matter was held in July 2016. The evidence showed that approximately 3 months after Paula filed for divorce, her mother gave her $15,000 to help with the expenses of the ongoing divorce. She used all of this gift from her mother towards attorney fees incurred during the divorce. Paula's mother gave her a second check in June 2014 for $15,000. Paula used this money towards paying off her mortgage. She did not disclose these two gifts from her mother when the divorce was pending. Paula testified that she did not supplement her discovery responses after receiving these funds from her mother because she did not know that it was necessary to do so.

The parties had lived separately for about 6 years before Paula filed for divorce. Paula primarily lived in the parties' Texas home, and Robert primarily resided in the Nebraska home. In 2012, Paula developed a friendship with Dew, and after the divorce, their friendship developed into a closer relationship. In 2015, Dew bought the house next door to Paula's house. Dew was 70 years old at the time of the modification trial and is a disabled veteran. He testified that he had some memory loss, had fallen a couple of times, and had no one to handle his financial affairs in the event he became sick or incompetent. Therefore, in May 2014, 2 months before the divorce trial date, Dew added Paula's name to a checking account and a savings account of his to enable her to pay his bills and handle his affairs should something happen to him. Later, in February 2015, Dew appointed Paula as his medical power of attorney, as well as his durable financial power of attorney.

Although Paula's name was added to Dew's accounts in May 2014, Paula did not disclose the accounts to Robert during the pending divorce. She testified that it never occurred to her that she needed to disclose Dew's accounts that included her name because she did not consider the money in the accounts to be hers. She testified that all the money in the accounts belonged to Dew. Paula did not access or use any of the money in Dew's accounts. Paula testified that she could write checks on the accounts, but only for Dew's needs, not for herself. Dew testified that all of the money in the accounts at issue was his.

Paula was 65 years old at the time of the modification trial. She does not work and continues to suffer from the same medical conditions that prevented her from working at the time of the parties' divorce. After the decree was entered in September 2014, Paula decided that it would be in her best interests to pay off the $127,000 mortgage on the Texas home and she began to make plans to do so. Dew was concerned that Paula was going to take too much money out of her Roth

IRA to pay off her mortgage, so he offered to let her use approximately $36,000 from one of his accounts at issue. Dew considered the $36,000 he gave to Paula as a loan or gift, in that it was something that Paula might pay back in the future if she was able to. Paula testified that when Dew gave her the money he told her to pay him back when she could, but she did not believe he would ever demand payment back.

Robert testified that he did not know at the time of the divorce that Paula had access to $36,323 in Dew's accounts, nor did he know that Paula's mother had given her money. He testified that he believed that the money in Dew's accounts at issue was actually Paula's money that she had given Dew to deposit in his account. In contrast, Dew testified that Paula had never given him any money to deposit into his accounts. Paula also testified that she never deposited any of her own money into Dew's accounts.

In 2015, the first full year after the divorce, Paula's gross income was $39,000, which was entirely from alimony payments. Robert's gross income increased from $165,257 in 2014 to $177,085 in 2015. Paula's estimated living expenses during the divorce were $4,114 per month. Her estimated living expenses at the time of the modification trial were $4,323, which included $700 for estimated taxes on her $3,250 monthly alimony payment, and $265 for the cost of Medicare.

Following trial, the court entered an order denying Robert's request to modify alimony and awarded Paula $5,000 in attorney fees.

## ASSIGNMENTS OF ERROR

Robert assigns that the trial court erred in (1) failing to find that a material change in circumstances existed to warrant a modification of alimony, and (2) awarding Paula $5,000 in attorney fees.

## STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014).

In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Garza v. Garza, supra.*

## ANALYSIS

*Modification of Alimony.*

Robert assigns that the trial court erred in failing to find that a material change in circumstances existed to warrant a modification in alimony. He contends that a material change in circumstances existed because Paula failed to disclose money she had received from her mother and Dew prior to entry of the decree, which enabled her to pay off the mortgage on her Texas residence shortly after the divorce. He suggests that paying off the mortgage significantly improved Paula's financial circumstances in that it decreased her monthly expenses by $800. Robert contends that his alimony payments should be reduced by an equitable amount to reflect Paula's improved financial circumstances.

Pursuant to Neb. Rev. Stat. § 42-365 (Reissue 2016), alimony orders may be modified or revoked for good cause shown. Good cause means a material and substantial change in circumstances and depends upon the circumstances of each case. *Metcalf v. Metcalf,* 278 Neb. 258, 769 N.W.2d 386 (2009). To determine whether there has been a material and substantial change in circumstances warranting modification of a divorce decree, a trial court should compare the financial circumstances of the parties at the time of the divorce decree with their circumstances at the time the modification at issue was sought. See *id.* The moving party has the burden of demonstrating a material and substantial change in circumstances which would justify the modification of an alimony award. *Id.*

The evidence established that Paula did not disclose the money she received from her mother or that she became a joint owner of Dew's checking and savings accounts. The trial court noted, and we agree, that Paula should have supplemented her answers to interrogatories to disclose the gifts from her mother and the co-ownership of Dew's accounts. However, in regard to the two $15,000 checks Paula received from her mother, those were nonmarital property and would not have been considered in dividing up the marital estate. The first check was given to her a few months after Paula filed for divorce and she testified that she used the entire amount to pay attorney fees prior to the time of trial. Paula received the second check from her mother a couple weeks before the divorce trial date. She testified that she did not disclose these two gifts from her mother because she did not know that it was necessary to do so.

As to Dew's accounts that included Paula's name, she and Dew both testified that Paula's name was added for Dew's convenience. He wanted Paula to have the ability to manage his financial affairs if he became incapacitated. He subsequently made her his medical power of attorney and durable financial power of attorney. Dew and Paula both testified that all the money in the account at issue belonged to Dew. Paula did not access or use any of the money in Dew's account. Paula testified that it never occurred to her that she needed to disclose Dew's accounts with her name on it because she did not consider the money in the account to be hers.

As the trial court found, the evidence established that the funds in Dew's accounts at issue "remained at all times the funds and property of Albert Dew." It was not until after the divorce that Dew gave Paula $36,323.65 out of one of the accounts at issue to use towards paying off her mortgage.

Based on the evidence before us, Paula did not purposefully or materially misrepresent her finances to Robert during the negotiation of the settlement terms as Robert contends. The failure to disclose the co-ownership of Dew's accounts and the gifts from her mother do not amount to a material and substantial change in circumstances to warrant a modification of alimony.

Further, the evidence does not support a finding that Paula's financial condition greatly improved when she paid off her mortgage, as Robert contends. Even though Paula eliminated an $800 monthly obligation when she paid off her mortgage, her monthly expenses remained nearly the same. Her financial affidavit from the parties' divorce in 2014 shows she had estimated living expenses of $4,114 per month which included her mortgage payment. Paula's estimated living expenses at the time of the modification trial were $4,323, which included two new expenses since the divorce - $700 for estimated taxes on her monthly alimony payment, and $265 for Medicare. These two expenses more than offset the elimination of her mortgage payment. Therefore, Paula's financial condition has changed very little since the decree was entered.

Upon our de novo review of the record, we cannot say that the district court abused its discretion in finding that Robert failed to prove good cause existed to warrant modifying the alimony award. Robert's first assignment of error is without merit.

*Attorney Fees.*

Robert next assigns that the trial court erred in awarding Paula $5,000 in attorney fees. In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Garza v. Garza, supra.* It has been held that in awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. *Id.*

In this case, Paula presented an affidavit from her attorney with an attachment documenting the attorney fees she incurred as a result of Robert's modification action. The fees totaled over $16,000. The trial court awarded her $5,000. The fees were incurred over the course of a year between the time the complaint to modify was filed and the 2-day modification trial was held.

Additionally, the disparity between the parties' respective income levels justified the court's award of fees to Paula. Paula's gross income in 2015 was $39,000, compared to Robert's which was $177,085. We cannot conclude that the $5,000 fee was unreasonable. Robert's second assignment of error is without merit.

## CONCLUSION

For the reasons discussed above, we conclude that there has not been a material change of circumstances warranting modification of the alimony awarded to Paula in the September 2014 decree. We also conclude that the trial court did not err in awarding Paula $5,000 in attorney fees. Accordingly, we affirm the order of the district court denying Russell's request for modification of the alimony award and awarding Paula $5,000 in attorney fees.

AFFIRMED.