Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/11/2022 09:05 AM CDT

**Lisa A. Gregg, now known as
Lisa A. Olson, appellee, v.
Richard L. Gregg, appellant.**

___ N.W.2d ___

Filed October 11, 2022.    No. A-21-550.

1. **Modification of Decree: Appeal and Error.** Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion by the trial court.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

3. **Motions to Dismiss.** If, on motion to dismiss, there is any evidence in favor of the nonmoving party, the case may not be decided as matter of law.

4. **Modification of Decree: Alimony: Good Cause: Words and Phrases.** Pursuant to Neb. Rev. Stat. § 42-365 (Reissue 2016), alimony orders may be modified or revoked for good cause shown. Good cause means a material and substantial change in circumstances and depends upon the circumstances of each case.

5. **Modification of Decree: Alimony: Good Cause.** Good cause is demonstrated by a material change in circumstances, but any changes in circumstances which were within the contemplation of the parties at the time of the decree, or that were accomplished by the mere passage of time, do not justify a change or modification of an alimony order.

6. **Modification of Decree.** The moving party for a modification has the burden of demonstrating a material and substantial change in circumstances which would justify the modification of an alimony award.

7. **Alimony.** An award of alimony should be based not only on income, but also on the general equities of the situation considering the relative economic circumstances of the parties.

8. **Modification of Decree.** A trial court should compare the financial circumstances of the parties at the time of the divorce decree with their circumstances at the time the modification at issue was sought.

Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Affirmed.

Richard L. Gregg, pro se.

Benjamin M. Belmont, of Brodkey, Cuddigan, Peebles, Belmont & Line, L.L.P., for appellee.

PIRTLE, Chief Judge, and BISHOP and WELCH, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Richard L. Gregg appeals from the order of the district court for Douglas County which denied his amended complaint to modify his alimony obligation. Based on the reasons that follow, we affirm.

## BACKGROUND

Richard and Lisa A. Gregg, now known as Lisa A. Olson, were married in December 1979. In April 2015, Lisa filed a complaint for dissolution of marriage. During the pendency of the dissolution proceedings, the trial court entered a temporary order in October 2015 requiring Richard to pay Lisa $11,000 per month in alimony. Richard was held in contempt multiple times after the temporary order was entered for failure to pay the alimony.

On the day trial was scheduled, the parties informed the trial court that a settlement had been reached on all disputed issues. A property settlement agreement was submitted to the trial court, approved by the court, and incorporated into a dissolution decree entered on September 21, 2016. Both parties were represented by counsel in reaching the settlement.

The decree provided that Richard would pay Lisa $8,000 per month in alimony, beginning July 1, 2016, for a period of 93

months. At the time the decree was entered, Richard owed Lisa $74,000 in temporary alimony. The consent decree provided that all amounts due and owing by Richard for unpaid temporary alimony were vacated. The decree also required Richard to maintain a life insurance policy on his life naming Lisa as an irrevocable beneficiary in a sum sufficient to fund his unpaid alimony obligation in the event of his death, for the duration of his alimony obligation.

In October 2019, Richard filed an amended complaint for modification of alimony, seeking to reduce or eliminate his alimony obligation because there had been material changes in circumstances to warrant a modification. Trial was held on Richard's amended complaint in May 2021. Richard appeared pro se, and Lisa was represented by counsel. Richard presented his own testimony and the testimony of his current wife, Janeen Macrino.

The evidence showed that at the time the decree was entered in September 2016, Richard was employed as a chief technology officer. He had a 3-year employment contract through March 20, 2018, with a base salary of $200,000 per year, plus other benefits. However, his employer stopped paying his salary in October 2016.

At the time the decree was entered, Richard had monthly living expenses in the amount of $5,126. Richard was also paying expenses for Macrino, his then girlfriend, including her utilities, health insurance, and car lease. In addition, Richard had $626,677 in debt. Richard filed bankruptcy in March 2017.

At the time of trial on the amended complaint to modify, Richard lived in a house Macrino owned, and Macrino was paying his living expenses. In addition, he had been relieved of the $626,677 in debt as a result of the bankruptcy proceedings. Richard owed Lisa $294,619.80 in past alimony, approximately $98,150 of which had accrued before Richard's amended complaint was filed.

Richard claimed that between December 2016 and February 2019, he sought other employment in his field without success.

In May 2018, he earned a master's degree in electrical and computer engineering to become more competitive in the job market. At the time of trial, he was working on his doctorate degree in electrical and computer engineering.

In February 2019, Richard entered into an employment agreement with Vuewel LLC as its chief technology officer. Richard testified that Vuewel was a startup technology company; it was in the research and development stage and did not yet have a product. The company had not raised outside capital and had not generated any revenue. Richard's employment agreement provides that he receives an annual salary of $1. The company is owned by Richard's wife, Macrino, who testified that Richard's salary is only $1 per year because Vuewel is not making any money.

Richard admitted that he had not submitted a resume to any potential employers since February 2019. He testified that there was no reason for him to look for a job and submit resumes because he had a job.

There was evidence that Richard deposited various checks made out to him from Macrino into a bank account. He deposited checks for $15,000 in June 2017, $22,000 in October 2017, and $8,000 in December 2017. In 2018, Richard deposited $4,000 in March, $12,000 in April, $10,000 in May, and $8,000 in August. Richard claimed that although the checks were made out to him and he deposited them into a bank account, the money belonged to his wife. Macrino testified that the checks made out to Richard were drawn on her checking account and were made out to Richard for him to deposit into another checking account used for paying bills. She testified that none of the money was Richard's and that Richard had not been contributing income for household expenses for a few years.

Richard also worked as an expert for an attorney in 2017, earning about $15,000. Richard did not report this $15,000 on his 2017 tax return. None of this money was used for his alimony obligation.

Richard was asked on cross-examination if he was receiving Social Security checks, and he replied that he was not. However, after being shown a Social Security check he received in July 2020 in the amount of $2,040, he admitted that he had applied to start receiving Social Security. He testified that he did not recall if he received other checks after the July check, but he stated that any Social Security benefits he received were deposited into Macrino's bank account. Richard stated that he had not contributed any of his Social Security benefits to his alimony obligation.

On cross-examination, Macrino testified that to her knowledge Richard was not receiving Social Security. She stated that he does not give her Social Security checks to deposit and that she had never seen a Social Security check for Richard. On redirect, Macrino testified that the Social Security benefits Richard has received have been reclassified as railroad retirement benefits and that those are deposited into one of her accounts.

After Richard rested his case, Lisa made a motion for directed verdict under Neb. Rev. Stat. § 25-1315.01 (Reissue 2016) asserting that there had not been a material change in circumstances that Richard did not voluntarily create.

The trial court granted a directed verdict in favor of Lisa, finding that Richard had not met his burden of proving a material change in circumstances. The court dismissed Richard's amended complaint for modification of alimony with prejudice.

## ASSIGNMENT OF ERROR

Richard assigns that the trial court abused its discretion by denying him a reduction or elimination of his alimony obligation.

## STANDARD OF REVIEW

[1,2] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of

discretion by the trial court. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Connolly v. Connolly*, 299 Neb. 103, 907 N.W.2d 693 (2018).

## ANALYSIS

Richard assigns that the trial court abused its discretion by denying him a reduction or elimination of his alimony obligation. The trial court denied him a change in alimony, because it determined he had not met his burden to prove a material change in circumstances. It then granted Lisa's motion for directed verdict.

We first note that this case is unique from a procedural standpoint. Richard, who was pro se, presented his case in part, followed by Lisa's presenting the testimony of her expert witness out of turn, with no objection by Richard. The expert provided an employability assessment on Richard. After Lisa's expert finished testifying, Richard continued presenting his case in chief. After Richard rested his case, Lisa made a motion for directed verdict.

[3] Although the court stated it was granting Lisa's motion for directed verdict, we determine that the court mischaracterized its ruling. The court did not state that it was granting a directed verdict, because there was no evidence in favor of Richard, the nonmoving party. See *Johnson v. Johnson*, 20 Neb. App. 895, 834 N.W.2d 812 (2013) (if, on motion to dismiss, there is any evidence in favor of nonmoving party, case may not be decided as matter of law). Rather, the court stated that after considering all the economic circumstances in the case, it did not believe there had been a material change in circumstances. We conclude that the court actually decided the issue presented in the case, that is, whether there was a material change in Richard's financial circumstances to warrant a change in his alimony. The parties seem to acknowledge

that this was the decision made by the court based on the arguments presented on appeal. Richard does not challenge the directed verdict, but, rather, he argues that the trial court abused its discretion in finding there was no material change in circumstances and argues how the evidence should have been resolved on the merits in his favor. Stated differently, he claims the court abused its discretion in its ultimate factual finding after improperly weighing the evidence. He asks us to reweigh the evidence and reach a different factual conclusion. Likewise, Lisa notes in her brief that Richard did not assign error to the granting of the directed verdict. She argues that the trial court properly found that Richard had not met his burden to prove there was a material change in circumstances warranting a reduction or elimination of alimony.

We conclude that the ultimate conclusion as to the weight of evidence, which is what Richard asks us to review, was correct. Richard did not meet his burden of demonstrating a material and substantial change in circumstances which would justify a modification of his alimony obligation.

[4-6] Pursuant to Neb. Rev. Stat. § 42-365 (Reissue 2016), alimony orders may be modified or revoked for good cause shown. *Metcalf v. Metcalf*, 278 Neb. 258, 769 N.W.2d 386 (2009). Good cause means a material and substantial change in circumstances and depends upon the circumstances of each case. *Id.* Good cause is demonstrated by a material change in circumstances, but any changes in circumstances which were within the contemplation of the parties at the time of the decree, or that were accomplished by the mere passage of time, do not justify a change or modification of an alimony order. *Id.* The moving party has the burden of demonstrating a material and substantial change in circumstances which would justify the modification of an alimony award. *Id.*

[8,9] An award of alimony should be based not only on income, but also on the general equities of the situation considering the relative economic circumstances of the parties. See *Grothen v. Grothen*, 308 Neb. 28, 952 N.W.2d 650

(2020). A trial court should compare the financial circumstances of the parties at the time of the divorce decree with their circumstances at the time the modification at issue was sought. *Id.*

Richard argues that "[a] comparison of the parties' current income and assets reveals a considerable disparity in their relative economic circumstances." Brief for appellant at 13. He contends his financial circumstances are much different than they were at the time of the divorce, justifying a reduction or elimination of alimony.

When the decree was entered, Richard was employed as a chief technology officer earning an annual base salary of $200,000. Richard testified that after his employer at the time stopped paying him, he searched for a similar job with similar pay for some time, to no avail. He also obtained a master's degree in electrical and computer engineering to make himself more marketable to employers. He claimed he was unable to find a position similar to what he had before. Accordingly, he started working for his wife's startup technology company, where he had been working for over 2 years, earning $1 per year. He argued that the salary was acceptable because the company was just getting started and it had no revenue. Richard had not submitted a resume to any potential employers since February 2019, and he stated that he did not need to look for employment because he had a job. He was able to live on a $1 salary because he had no living expenses. He was living in a house owned by his wife, and she was paying for all of his expenses. Richard was also receiving Social Security checks, which totaled around $25,000 per year. He had not used any of that money toward his alimony obligation. In 2017, he made $15,000 as an expert for an attorney and, again, did not use any of this money for alimony. By filing for bankruptcy, Richard was also relieved of $626,677 in debt that he had at the time of the divorce.

Richard claims that he cannot pay $8,000 per month in alimony based on his current income. He essentially argues

that his alimony should be reduced or eliminated because he is working for a startup company that cannot pay him. The evidence shows that Richard is highly skilled, well educated, and has an extensive work history. He has over 20 years of experience as a chief technology officer. After the divorce, he obtained his master's degree in electrical and computer engineering and was working on his doctorate degree. He also owns multiple patents. He is in good health and able to work.

Although he claimed that between December 2016 and February 2019 he was unable to find a comparable job with a similar salary as he had at the time of the divorce, he had not looked for a different job or submitted a resume since February 2019. He claimed that there was no reason for him to look for another job because he had a job and that it was reasonable he was only making $1 per year because he was working for a startup company. Yet, he acknowledged that the company will likely never be successful, meaning his salary may never increase. He has chosen to remain at a job that pays him essentially nothing, with no indication when or if that will ever change, and he believes that is justification for having his alimony reduced or eliminated. Although his financial circumstances have considerably changed since the decree was entered, his circumstances at the time of trial were the result of his own willful and voluntary choices. Specifically, he chose to be significantly underemployed at his wife's startup company and to rely on her to pay his expenses, rather than to look for another job that would enable him to pay his alimony obligation.

Based on the facts of this case, we conclude the trial court did not abuse its discretion in finding that Richard's decreased income at the time of trial did not constitute a material change in circumstances or good cause justifying a modification of alimony.

Richard's assignment of error fails.

## CONCLUSION

We conclude that Richard did not adduce sufficient evidence to demonstrate a material change in circumstances which would justify a modification of alimony. Accordingly, the order of the trial court denying Robert's complaint for modification is affirmed.

AFFIRMED.