744 N.W.2d 710 (2008)
275 Neb. 152
Lana Sue SIMPSON, Appellant
v.
Robert Eugene SIMPSON, Appellee.
No. S-06-1461.
Supreme Court of Nebraska.
February 22, 2008.
*712 Jeffrey L. Hansen and Margaret A. Olsen, of Simmons Olsen Law Firm, P.C., Scotts Bluff, for appellant.
James W. Ellison and James M. Mathis, of Kovarik, Ellison & Mathis, P.C., Gering, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN,
McCORMACK, J.

NATURE OF CASE
Lana Sue Simpson appeals from an order of the district court denying her request to modify alimony. She also appeals the district court's refusal to include expatriate compensation in the gross monthly income of her former spouse, Robert Eugene Simpson, for purposes of modifying Robert's child support and alimony obligations.

BACKGROUND
On December 30, 2002, an order was entered by the district court dissolving Lana and Robert's marriage. Under the terms of the decree, Lana was awarded custody of the parties' children, born May 10, 1988, and August 10, 1990. When the decree of dissolution was entered, Robert's gross monthly income was $10,833 and Lana's gross monthly income was $1,577.74. Robert was ordered to pay child support in the amount of $1,617 per month for two children and $1,109.35 per month for one child. Robert was also ordered to pay alimony in the amount of $1,250 per month for 72 months.
In October 2004, Lana requested a modification of the divorce decree. Among other things, Lana sought to increase Robert's child support and alimony obligations. In a January 2005 order, the district court found that since the entry of the decree of dissolution, there had been a material change in the parties' respective incomes. At that time, Lana's annual gross income was $29,000 and Robert's annual gross income had increased from $180,000 in 2002 to $325,000 in 2005. The court held that in light of the parties' situation and the attendant circumstances, it was reasonable for Robert to pay child support in the amount of $3,250 per month for two children, *713 and $2,250 per month for one child. The court further found, however, that Robert's substantial increase in income was not a sufficient ground to increase alimony payments. The court noted that Lana had failed to meet her burden of proof that additional funds were necessary to reasonably meet her current needs.
In May 2006, Lana again sought a modification of Robert's child support and alimony obligations. Lana alleged that Robert's income had increased significantly and that because she had returned to school full time, she did not have the same income as she did in January 2005.
At that time, Robert was working for Lehman Brothers, Inc., in Mumbai, India. Under the terms of his international employment, Robert was guaranteed minimum total compensation of $550,000 in salary and bonuses for the 2006 work year. As part of his compensation package, Robert received an annual base salary of $175,000 payable in equal monthly increments. The balance of his minimum total compensation was to be paid as a bonus on or about January 31, 2007. Robert also received additional compensation described as "expatriate benefits/allowances." Expatriate compensation is additional compensation provided to offset the differences in costs of living outside an employee's home country. This pay is reflected on Robert's pay stubs as "Choice $" and Bonus Special 2006. "Choice $" is defined by Lehman Brothers as "[a] cash payment designed to defray the material difference in living expenses in Mumbai (relative to the cost of living/housing in the New York metropolitan area)." The Bonus Special 2006 compensation is designed to defray the even greater additional costs associated with living in Mumbai in light of Nebraska's lower cost of living and housing in comparison to the New York metropolitan area. The record reflects that in January 2006, Robert received $7,112.39 in "Choice $" compensation and $3,225.81 in Bonus Special 2006 compensation. In February 2006, Robert received $10,022 in "Choice $" compensation and $4,000 in Bonus Special 2006 compensation. From March through September 2006, Robert received in each of those months, $10,504.54 in "Choice $" compensation and $4,000 in Bonus Special 2006 compensation.
In January 2005, Lana was employed full time and had a gross monthly income of $2,416.67. In her 2004 modification action, Lana estimated average monthly living expenses were $4,944 for herself and the parties' two children. In November 2005, Lana voluntarily left her employment and remained unemployed at the time of the court's November 2006 order. In the present action to modify, Lana claims that her average monthly living expenses increased to $9,123.34.
In its November 2006 order, the district court found that Robert's expatriate compensation was not available to pay child support, but, rather, was necessary for Robert's additional cost of living in India. The court explained that Robert's expatriate compensation, is "analogous to the deviation recognized in Guideline C(1), i.e. extraordinary expenses of either parent or child." Accordingly, the district court determined that Robert's gross income for child support calculations was `$550,000 annually, or $45,833.33 per month. The district court also determined that annual income in the amount of $29,000 should be attributed to Lana. The court further determined that Lana had provided no documentation to support her claim that her living expenses had increased so substantially. In light of Robert's increased income, the district court increased Robert's child support obligation to $4,250 per month for two children and 83,250 per *714 month for one child. The court denied, however, Lana's request to increase Robert's alimony obligation. Lana appeals.

ASSIGNMENTS OF ERROR
Lana assigns, restated, that the district court erred in (1) failing to include expatriate compensation in Robert's gross monthly income for purposes of child support and alimony and (2) failing to find good cause to increase Robert's alimony obligation to Lana.

STANDARD OF REVIEW
Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court.[1] A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[2]

ANALYSIS
EXPATRIATE COMPENSATION
Lana contends that the district court erred in failing to include Robert's expatriate compensation in Robert's gross monthly income for purposes of child support and alimony.
A review of Robert's pay stubs reveals that his expatriate compensation is counted as income. Paragraph D of the Nebraska Child Support Guidelines defines total monthly income as income "derived from all sources, except all means-tested public assistance benefits which includes any earned income' tax credit and payments received for children of prior marriages." The guidelines are very specificall income from all sources is to be included except for those incomes specifically excluded. Not excluded under the guidelines is compensation meant to offset a spouse's increased cost of living while residing in a different locale. We conclude, therefore, that Robert's expatriate compensation is income for purposes of support calculations.

CHILD SUPPORT
In general, child support payments should be set according to the guidelines.[3] The guidelines provide that in calculating child support, a court must consider the total monthly income of both parties.[4] As explained above, this includes Robert's expatriate income.
To determine monthly support amounts, the combined monthly net income of both parties is factored into table 1 of the guidelines to establish the appropriate level of support.[5] At the time of the district court's order, table 1 did not provide for support amounts when the combined net monthly income exceeds $10,000. Paragraph C(3) of the guidelines provided that when total net income exceeds $10,000, child support "may be more but shall not be less than the amount which would be computed using the $10,000 monthly income unless other permissible deviations exist." We have held that "`total monthly *715 child support calculations which exceed the combined net monthly income provided for in the guidelines should be left to the discretion of the trial court and affirmed absent an abuse of discretion.'"[6]
As pointed out by the district court, the evidence reflects that the additional living expenses incurred by Robert while living in Mumbai are significant. Among those expenses are rental payments of $7,905 per month. Robert's employer would not allow him to drive a car in India, and he therefore had to employ a full-time driver. Also, each trip to and from the United States for holidays, visitation, et cetera, cost $3,000 to $6,000 per trip in airfare. These are additional expenses that Robert would not incur while residing in Nebraska, and the record reflects that these additional expenses are offset by Robert's expatriate compensation. Under the facts of this case, we cannot say that the district court abused its discretion when it determined that Robert's expatriate compensation is not reasonably available for child support payments.

ALIMONY
Finally, Lana contends that the district court erred in refusing to increase Robert's alimony obligation.
Pursuant to Neb.Rev.Stat. § 42-365 (Reissue 2004), alimony orders may be modified or revoked for good cause shown.[7] Good cause means a material and substantial change in circumstances and depends on the circumstances of each case.[8] To determine whether there has been a material and substantial change in circumstances warranting modification of a divorce decree, a trial court should compare the financial circumstances of the parties at the time of the divorce decree, or last modification of the decree, with their circumstances at the time the modification at issue was sought.[9] The moving party has the burden of demonstrating a material and substantial change in circumstances which would justify the modification of an alimony award.[10]
In 2005, at the time of the last modification of the parties' decree, Lana had an annual gross income of approximately $29,000 and Robert had an annual gross income of $325,000. Since that time, both parties have seen significant changes in their financial situations. Lana voluntarily left her employment in November 2005 and presently remains unemployed. She is, however, completing her bachelor's degree via online classes through the University of Phoenix. Robert, on the other hand, has seen a significant increase in his annual gross income. Lana also claims that her living expenses have increased. When she first sought modification in 2004, Lana estimated that her living expenses were $4,944 for her and the parties' two children. In the present action, Lana claims her average monthly living expenses are $9,123.34, almost double what they were 2 years ago. The changes in the parties' financial situations is the basis for Lana's request for modification of alimony.
We have stated that an increase in income is a circumstance that may be considered in determining whether alimony should be modified.[11]
*716 In Desjardins v. Desjardins,[12] we acknowledged that an increase in a party's income is a circumstance which may be considered in determining whether alimony should be modified. We noted, however, that a party's increase in income is considered in conjunction with changes in the other party's situation. The record in the present case reveals that Lana did not present any evidence to substantiate her purported increase in living expenses. Lana presented only testimony and a current expense itemization that is unsupported by other documentary evidence. A review of the itemizations from the previous modification proceeding and this proceeding reflect that the increase in Lana's living expenses is primarily attributable to the parties' children, particularly the college expenses for the oldest child who had reached majority at the time of the hearing. Excluding the children's separate expenses, Lana's current living expenses are substantially the same as they were at the time of the last modification proceeding.
The record further reveals that the only other substantial change in Lana's financial situation is her present lack of employment. While her initiative to further her education is commendable, the record reveals that her decision to leave her employment was not because of her decision to return to school. Lana testified that she chose to leave her employment for a "multitude" of reasons. She testified, "Basically it was my values were very different than what [her employer's] values were, or as I gathered it."
We have stated that a petition to modify alimony will be denied if the change in financial condition is due to the fault or voluntary wastage or dissipation of one's talents or assets.[13] Although Lana is presently attending college, her decision to leave her employment, by her own admission, was not to pursue further education, but, rather, personal differences with her employer. We do not consider this to be a material and substantial change of circumstances.
Although an increase in the income of the spouse paying maintenance is a relevant factor for the trial court to consider, it alone does not require the court to modify the amount of maintenance previously ordered.[14] In this case, the district court found that Lana had not proved her claim that her living expenses had increased from $4,944 to $9,123.34 per month. We note that most, if not all, of the increase she seeks is for additional expenses for the parties' children. The child support, however, had increased for two children from $1,617 in December 2002, to $3,250 in January 2005, and then to $4,250 in November 2006. "The ultimate issue is whether . . . changes are sufficiently substantial and continuing so as to make the original terms of the decree unreasonable.'"[15] We have stated that alimony should not be used to equalize the incomes of the parties or to punish one of the parties.[16] Under the facts of this case, we conclude that the evidence of Robert's increased income does not constitute, in and of itself, a material and substantial change in circumstances, without a proven increase in Lana's living expenses. Accordingly, *717 we affirm the order of the district court.

CONCLUSION
For the reasons discussed above, we conclude that Robert's expatriate compensation is income for purposes of support calculations. We further determine, however, that the district court did not abuse its discretion in refusing to increase Robert's child support and alimony obligations.
AFFIRMED.
NOTES
[1] Finney v. Finney, 273 Neb. 436, 730 N.W.2d 351 (2007).
[2] Pope v. Pope, 251 Neb. 773, 559 N.W.2d 192 (1997).
[3] State on Behalf of A.E. v. Buckhalter, 273 Neb. 443, 730 N.W.2d 340 (2007). See Neb. Rev. Stat § 42-364.16 (Reissue 2004).
[4] See State on Behalf of A.E. v. Buckhalter, supra note 3.
[5] Id.
[6] Id. at 455, 730 N.W.2d at 350, quoting Faaborg v. Faaborg, 254 Neb. 501, 576 N.W.2d 826 (1998).
[7] Finney v. Finney, supra note 1.
[8] Id.
[9] See id.
[10] Id.
[11] See Northwall v. Northwall, 238 Neb. 76, 469 N.W.2d 136 (1991).
[12] Desjardins v. Desjardins, 239 Neb. 878, 479 N.W.2d 451 (1992).
[13] Pope v. Pope, supra note 2.
[14] Swartz v. Johnson, 192 S.W.3d 752 (Mo. App.2006).
[15] Id. at 755, quoting Rustemeyer v. Rustemeyer, 148 S.W.3d 867 (Mo.App.2004).
[16] Reichert v. Reichert, 246 Neb. 31, 516 N.W.2d 600 (1994).