IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

ELLIS V. ELLIS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

PHILLIP J. ELLIS, APPELLANT,

V.

JENNIFER J. ELLIS, NOW KNOWN AS JENNIFER J. JARDINE, APPELLEE.

Filed April 7, 2020.   No. A-19-252.

Appeal from the District Court for Hall County: MARK J. YOUNG, Judge. Affirmed.

Aaron M. Bishop, of Bishop Law, L.LC., for appellant.

Erin E. Schroeder, of Smith, Johnson, Baack, Placzek, Allen, Connick & Hansen, for appellee.

MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

RIEDMANN, Judge.

INTRODUCTION

Phillip J. Ellis appeals the order of the district court for Hall County, which denied his complaint to modify his alimony obligation to Jennifer J. Ellis, now known as Jennifer J. Jardine. We find that the district court did not abuse its discretion in denying Phillip's complaint. We therefore affirm.

BACKGROUND

Phillip and Jennifer were married in 1996 and Phillip filed a complaint for dissolution of marriage in March 2015. The parties entered into a property settlement agreement, which was accepted by the district court and incorporated into the decree dissolving the marriage in May 2016. The settlement agreement required Phillip to pay $1,400 per month in child support while two of the parties' children were minors and $913 per month while there was one minor child.

- 1 -

Additionally, Phillip agreed to pay Jennifer $1,200 per month in alimony for 9 years. According to the decree, at the time of the dissolution, Jennifer's monthly income was $1,560 and Phillip's was $8,500.

In October 2017, Phillip filed a complaint for modification of his child support and alimony obligations. Phillip alleged that a material change in circumstances had occurred which should result in a reduction in his child support payments. He further alleged that there was good cause to modify his agreed upon alimony obligation to Jennifer. A trial was held on Phillip's complaint to modify in November 2018. Prior to the start of trial, Phillip filed a motion to compel Jennifer to respond to discovery requests he had previously served upon her. The district court granted Phillip's motion in part, ordering Jennifer to supply tax returns and supporting documents of the business It's All Relative, LLC; the court otherwise denied the motion to compel.

At trial, Phillip adduced testimony from Jennifer and her father. Jennifer's father testified that he owned the company Farmland Irrigation (Farmland), and employed Phillip. In 2014, he sold Farmland, but not all of the real property owned by the company. Jennifer's father then created It's All Relative to rent out the real estate formerly owned by Farmland. Jennifer's father also stated that he gifted ownership interests in Farmland, and then in It's All Relative, to his children. Additionally, he informed the court that he owned the home Jennifer lived at following the divorce, and paid the property taxes on the home; however, Jennifer paid him rent and paid for utilities and upkeep on the home.

Jennifer echoed her father's testimony, explaining that she owned stock in Farmland, and then received distribution payments from It's All Relative. She further testified that she received money from the sale of Farmland and invested the money, which produced income for her. Jennifer indicated that her accountant prepared her tax returns, which reported her investment income and passive income.

The evidence also demonstrated that Jennifer married Phillip when she was 23 years old, and she was not employed during the marriage; rather, she remained at home and took care of the parties' children and home. At the time of the divorce, both parties believed that Jennifer was unable to work due to a medical condition from which she suffered. However, after the divorce, she engaged in new treatment and became employed part-time. Three weeks before the trial, she became employed full-time at a different company earning $16.40 per hour. Jennifer testified that she planned to opt into health insurance offered by her employer when she qualified. She also indicated that obtaining health insurance for herself and her children was a big factor in her seeking employment. At the time of trial, one of the parties' children resided with Jennifer, and another attended college in Omaha, and would turn 19 shortly after the trial.

Phillip testified on his own behalf. He explained that he worked for Farmland during the marriage, then worked for the company that bought Farmland, and then voluntarily left that position and became employed at Hydro Irrigation (Hydro). At the time of trial, Phillip was a part owner of Hydro. Phillip testified that prior to the divorce his salary was $105,000 per year; however, his 2017 tax return indicated that his salary had decreased to $76,548 per year. He testified that he had to reduce his income at Hydro in order for the business to operate. Hydro's account manager testified similarly, indicating that Phillip had to take a pay cut in order for the company to survive.

Further testimony adduced at trial cast doubt on the actual amount of Phillip's income. In addition to his salary, Phillip had the use of a company truck, for which Hydro paid the gas, insurance, taxes, and licensure fees. Additionally, Hydro provided him with a cell phone for which he did not have to pay a monthly bill, a company credit card he could use for lodging and meals, and health insurance for him and his children. Moreover, Jennifer's accountant testified that Phillip did not properly report income he received as an owner of Hydro on his 2017 tax return; thus, his actual 2017 income was higher than what he reported it to be.

Following the trial, the district court found that Phillip did not demonstrate good cause to modify his alimony payments or that a material change in circumstances had occurred to modify his child support. The court found that at the time of the modification trial, Phillip's monthly income was at least $6,032.41 and Jennifer's was $4,816.50. The court further indicated that the amount of alimony agreed upon in the settlement agreement would have been reasonable even if Jennifer was working at the time, given the duration of the marriage and the fact that she did not work during the marriage. The court also noted that it was expected that a party's parents would assist their child following a divorce, assistance which Jennifer's father provided by allowing her to rent her home at less than fair market value.

The court also found Phillip's decision to leave his prior employment was voluntary and questioned how substantial of a decrease in income Phillip suffered, given the benefits he received from Hydro. The court concluded by stating that it was unclear how long Jennifer would be able to maintain her employment, considering the uncertainty surrounding her medical condition, and that "no evidence was adduced at the trial which would indicate that her medical conditions will be alleviated long term." Phillip timely appealed the district court's order.

ASSIGNMENTS OF ERROR

Phillip assigns, consolidated, restated, and renumbered, that the district court erred in (1) failing to modify the consent decree dissolving his marriage to Jennifer and (2) failing to grant his motion to compel in its entirety.

STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Simpson v. Simpson*, 275 Neb. 152, 744 N.W.2d 710 (2008). A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

Decisions regarding discovery are directed to the discretion of the trial court and will be upheld in the absence of an abuse of discretion. *Moreno v. City of Gering*, 293 Neb. 320, 878 N.W.2d 529 (2016). The party asserting error in a discovery ruling bears the burden of showing that the ruling was an abuse of discretion. *Id*.

ANALYSIS

*Denial of Complaint to Modify.*

At the outset of our analysis, we note that although Phillip requested the district court to modify both his child support and alimony obligations, on appeal he appears to challenge only the district court's refusal to modify his alimony obligation. Phillip's assigned errors refer to the district court's failure to find that a material change of circumstances had occurred, which could refer to both child support and alimony, but his argument to this court specifically refers to the court's refusal to modify his alimony payments. Accordingly, we limit our review to whether the district court abused its discretion in failing to modify Phillip's monthly alimony payments. We find no abuse of discretion.

Alimony orders may be modified or revoked for good cause shown. *Metcalf v. Metcalf*, 278 Neb. 258, 769 N.W.2d 386 (2009); Neb. Rev. Stat. § 42-365 (Reissue 2016). Good cause means a material and substantial change in circumstances and depends upon the circumstances of each case. *Metcalf v. Metcalf, supra*. The moving party has the burden of demonstrating a material and substantial change in circumstances which would justify the modification of an alimony award. *Id*.

The Nebraska Supreme Court has held that, although courts have the authority to modify consent decrees, a consent decree is treated as an agreement between the parties and is accorded greater force than ordinary judgments, and therefore, ordinarily will not be modified over objection of one of the parties. See *Desjardins v. Desjardins*, 239 Neb. 878, 479 N.W.2d 451 (1992). The Supreme Court has stated on numerous occasions that where parties to a divorce action voluntarily execute a property settlement agreement which is approved by the dissolution court and incorporated into a divorce decree from which no appeal is taken, its provisions as to real and personal property and maintenance will not thereafter be vacated or modified in the absence of fraud or gross inequity. See, *Carlson v. Carlson*, 299 Neb. 526, 909 N.W.2d 351 (2018); *Ryder v. Ryder*, 290 Neb. 648, 861 N.W.2d 449 (2015). See, also, *Whitesides v. Whitesides*, 290 Neb. 116, 858 N.W.2d 858 (2015); *Peter v. Peter*, 262 Neb. 1017, 637 N.W.2d 865 (2002); *Hoshor v. Hoshor*, 254 Neb. 743, 580 N.W.2d 516 (1998).

Here, Phillip and Jennifer agreed to a property settlement agreement which was approved by the district court and incorporated into the dissolution decree. The property settlement agreement required Phillip to pay Jennifer $1,200 per month in alimony for 9 years. Phillip did not allege in his complaint to modify that fraud or gross inequity necessitated that the decree be modified. Thus, we examine the record to determine only whether the court's failure to modify the alimony award would result in gross inequity. See *Whitesides v. Whitesides, supra* (where modification of property settlement agreement is sought, trial court's findings should have been limited to appropriateness of modification due to fraud or gross inequity). Upon our review of the record, we do not find gross inequity which mandates that Phillip's monthly alimony payment be modified.

Phillip argues that his monthly alimony payment should be reduced because Jennifer's income increased, whereas his income decreased. The record supports his contention that Jennifer's income increased following the dissolution decree. At the time the parties agreed on the

amount of alimony to be paid to Jennifer, she was not employed, and both parties believed that she was unable to work due to a medical condition. Shortly after the marriage was dissolved, Jennifer became employed on a part-time basis, and at the time of the modification trial, she was employed full-time, earing $16.40 per hour.

Additionally, the record reveals that after the divorce, Jennifer received income from It's All Relative, as well as income from other investments she owned. However, she testified that she owned the same percentage of It's All Relative, as she did for Farmland prior to the consent decree. Considering the above, at the time of the modification trial, the court determined Jennifer's monthly income, not including alimony, was $4,816.50, which was more than her monthly income of $1,560 at the time of the consent decree.

Phillip contends that his income has substantially decreased. However, the court found that he voluntarily left his prior employment to seek employment with Hydro. In 2017, Phillip became a part owner of Hydro, and his salary was reduced from $105,000 in 2016 to $76,548 in 2017. Phillip's reduction in salary was due to the fact that Hydro could not operate if it remained what it was when he was an employee.

The court questioned the extent to which Phillip's income was reduced because of the numerous fringe benefits he received as an owner of Hydro. He was provided a company truck, which was paid for by Hydro, and Hydro paid the gas, insurance, taxes, and licensure fees on the truck. Hydro provided a cell phone for Phillip to use and paid the monthly bill for the phone. It also provided health insurance for Phillip and his children. Additionally, Phillip was able to use a company credit card for meals and lodging while he traveled. There was also testimony from Jennifer's accountant who questioned whether Phillip properly excluded certain income from his 2017 tax return, and indicated that his actual 2017 salary was higher than what he reported. The court concluded that Phillip receives at least $6,032.41 in monthly income as compared to the $8,500 he was earning at the time of the divorce, but that he had substantial other benefits.

Here, it is clear that Jennifer's income has changed, but the evidence does not support a conclusion that Phillip's income has substantially changed, such that to leave it unchanged would result in a gross inequity. The district court stated that "the amount agreed to in the settlement would be reasonable alimony even if [Jennifer] had been working at the time of the divorce." This conclusion was based on the fact that Jennifer did not work during the marriage and was unable to accumulate retirement savings, which Jennifer testified was the reason for Phillip's agreed upon alimony obligation. Given the parties' respective financial situations, we can find no abuse of discretion in the court's refusal to modify alimony.

Phillip cites *Cooper v. Cooper*, 219 Neb. 64, 361 N.W.2d 202 (1985) for the proposition that an alimony recipient's obtaining employment after the date of the decree is a circumstance that permits the situation of the parties to be reexamined. In *Cooper*, the Supreme Court modified the amount of alimony to be paid monthly by the appellant, but did not reduce his total alimony obligation. The parties had entered into a consent decree whereby the appellant agreed to pay the appellee $268,700 in alimony over 10 years and 2 months, making payments of $2,200 per month. *Id.* The appellee did not work during the marriage, and at the time of the consent decree, was unable to work due to a medical condition. *Id.* However, shortly after the divorce, the appellee was able to obtain gainful employment, earning more than $18,000 per year. *Id.*

On the other hand, the appellant in *Cooper* was employed during the marriage as a physician, making $134,000 at the time of the divorce. However, at the time of the modification trial, the appellant was earning $55,000 per year. *Id.* In light of the changes in income by both parties, the Supreme Court found "a material and substantial change of circumstances sufficient to warrant a modification in the decree so as to afford appellant temporary relief." *Id.* at 69, 361 N.W.2d at 206. However, it refused to reduce the total amount of alimony because it would "seriously impair [the] appellee's ability to plan for her retirement." *Id.* Therefore, the court reduced the appellant's monthly payment but increased the duration of payments.

In the present case, Jennifer's situation is nearly identical to that of the appellee in *Cooper* in that she did not work for the duration of the marriage, received monthly alimony under a consent decree, and then became employed after the divorce. However, Phillip's decrease in income, if any, was not as dramatic as the appellant's in *Cooper*, and the true amount of Phillip's decrease is questionable given his additional fringe benefits.

Unlike the court in *Cooper*, we do not find that the combined effects of Phillip's alleged lower income and Jennifer's newfound capacity to work amounts to a gross inequity. Rather, a decrease in alimony would seriously impair Jennifer's ability to plan for her retirement, something she had not previously contemplated because she had not been employed outside the home during the marriage. We therefore find no abuse of discretion in the court's refusal to modify alimony.

Phillip also asserts on appeal that the district court placed an unrealistic and unrequired evidentiary burden on him by stating that "there is still a question whether [Jennifer's] reentry into the workforce will be permanent." Brief for appellant at 18. While we agree with Phillip that our case law does not impose upon a moving party the burden to prove permanency of employment, we find that the court's consideration of Jennifer's future ability to work was not the sole reason it denied Phillip's complaint to modify. As iterated above, when the entirety of Jennifer and Phillip's financial circumstances are considered, there was no gross inequity in continuing alimony payments as agreed by the parties. Consequently, the court's imposition of a heightened burden on Phillip to demonstrate that Jennifer could maintain her employment in the future did not change the court's ultimate conclusion that the amount of alimony should remain unchanged. Therefore, we do not find that Phillip was denied a just result by the court's burden, and thus, the court did not abuse its discretion.

*Motion to Compel.*

Phillip also asserts that the district court erred in failing to grant his motion to compel in its entirety. Decisions regarding discovery are directed to the discretion of the trial court and will be upheld in the absence of an abuse of discretion. *Moreno v. City of Gering*, 293 Neb. 320, 878 N.W.2d 529 (2016). We find no abuse of discretion.

In July 2018, Phillip filed a motion to compel, seeking to compel Jennifer to fully answer interrogatories and produce documents requested by Phillip. The district court granted Phillip's motion in part, ordering Jennifer to supply tax returns and supportive documents of It's All Relative. The court otherwise denied Phillip's motion to compel. On appeal, Phillip argues that the requested information could have affected the parties' relative financial situation and "may

have been instrumental in [Phillip's] being able to convince the Court that a material change in circumstances existed at the time of trial." Brief for appellant at 14.

From the record, it appears the discovery Phillip sought to have answered addressed Jennifer's investment and retirement accounts, any gifts she received or disposed of, and any mortgages or creditors she had. After reviewing the record, we find that the exhibits admitted at trial and testimony of the witnesses adequately addressed Phillip's discovery requests.

First, Jennifer's 2015, 2016, and 2017 tax returns listed the income she received as investment income or passive income. At trial, Jennifer testified that she trusted her accountant to prepare her tax returns, and did not care to understand what was on them. Jennifer also testified that she received some money from the sale of Farmland, and invested that money, which generates income for her. Further, Jennifer testified that she did not work during her marriage to Phillip. Therefore, she would not have any retirement savings. Accordingly, there was sufficient evidence in the record detailing Jennifer's investment and retirement accounts.

Next, Jennifer's father testified that he owns the home that Jennifer lives in and pays the property taxes on it. He further testified that he had gifted his children various ownership interests in Farmland and It's All Relative. The district court considered the fact that Jennifer's father provided her with a home at reduced rent; thus, she did not have a mortgage or other creditors and stated it was "indeed expected in most cases" for a party to receive support from her family following a divorce.

Based on the record before us, the information sought by Phillip was either admitted through other evidence, such as Jennifer's tax returns, or was testified to by various witnesses. Consequently, the district court did not abuse its discretion in partially denying Phillip's motion to compel.

CONCLUSION

For the foregoing reasons, we affirm the order of the district court denying Phillip's complaint to modify his alimony obligation.

AFFIRMED.