IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


NIELSEN V. NIELSEN


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


LISA NIELSEN, APPELLEE,

V.

AARON NIELSEN, APPELLANT.


Filed June 29, 2021.    No. A-20-600.


Appeal from the District Court for Douglas County: GARY B. RANDALL, Judge. Affirmed.

Kelly T. Shattuck, of Vacanti Shattuck, for appellant.

Michael B. Lustgarten, of Lustgarten Dudzinski, L.L.C., for appellee.


RIEDMANN, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Aaron Nielsen appeals from the decision of the Douglas County District Court concluding that no material change in circumstances occurred to warrant a change in his child support and alimony obligations, and also finding Aaron's complaint for modification to be frivolous, and as a result, ordering him to pay Lisa Nielsen's attorney fees. We affirm.

### BACKGROUND

Aaron and Lisa were married in 2005. Together they have two children (born in 2010 and 2012). Lisa filed for divorce in 2017.

The district court entered a decree dissolving Aaron and Lisa's marriage in July 2018. It found the parties' settlement agreement to be reasonable and accepted the terms of that agreement. The parties agreed that Aaron would pay alimony to Lisa in the amount of $3,200 per month for

- 1 -

60 months beginning June 1. Aaron and Lisa were awarded joint legal and physical custody of their minor children.

Two child support calculation worksheets were attached to the decree. One worksheet showed Aaron's total monthly net income was $19,200 and Lisa's total monthly net income was $2,314; Aaron's share of monthly support for both children was $2,648. The other worksheet showed Aaron's total monthly net income was $8,340 and Lisa's total monthly net income was $3,673; Aaron's share of monthly support for both children was $1,754. The decree, which reflects the parties' agreement, ordered Aaron to pay child support of $2,000 per month, beginning June 1, 2018. Despite the child support amount ordered not matching the figures contained on either of the attached worksheets, there was no explanation in the decree as to how the ordered child support amount was determined or why the amount deviated from the attached worksheets. However, during her testimony at the modification trial, Lisa explained that the parties disputed whether the income reported on Aaron's tax returns was an accurate representation of his income, given their lifestyle. Lisa testified that ultimately, the parties agreed to Aaron paying $2,000 in child support per month, despite not agreeing on Aaron's income.

In May 2019, 10 months after the decree was entered in July 2018, Lisa filed an application for contempt, in which she alleged that Aaron should be found in contempt for failing to pay child support and alimony. Lisa alleged that by May 2019, Aaron owed $8,053 in child support and $12,832 in alimony. After a hearing before the district court referee, Aaron was found to be in willful contempt. In addition to his normal monthly child support and alimony obligations, he was ordered to pay $300 per month toward the child support and alimony arrearages. He was also ordered to pay Lisa's attorney fees for the contempt action. The referee's report was later ratified by the district court.

In July 2019, while the contempt action against him was still pending, Aaron filed a complaint for modification. In the complaint, he alleged that there had been a material change in circumstances since the entry of the decree which warranted a modification to his child support and alimony obligations. Specifically, Aaron alleged that "there had been a business downturn making it impossible for [him] to pay his obligations. Further, both parties' incomes have changed which would result in a 10% or greater reduction in [his] obligation." Aaron asked that the district court recalculate his child support and alimony obligations based upon the parties' current incomes.

Lisa filed an answer and counterclaim to Aaron's complaint for modification. In her answer, she denied Aaron's allegation that there had been a material change in circumstances warranting a modification of his child support and alimony obligations. She then "affirmatively allege[d]" that Aaron's complaint for modification was frivolous and without any basis. She asked that she be awarded attorney fees. In Lisa's counterclaim, she asked the district court to order Aaron to pay his share of the children's expenses, pursuant to the July 2018 decree of dissolution.

Trial was held on Aaron's complaint for modification on March 16, 2020. The focus of the evidence presented at trial was Aaron's employment and financial circumstances, both at the time the decree was entered and at the time of the modification proceedings.

At the outset of his testimony, Aaron admitted that as a part of the decree, he had agreed to pay $2,000 per month in child support and $3,200 a month in alimony. Aaron also admitted that he has failed to regularly pay his child support and alimony obligations since the entry of the

decree. Aaron indicated that he voluntarily paid a total of $2,550 toward his obligations since February 2019. He indicated that he did not pay any more toward his obligations because he was not able to pay the "full amount." In December 2019, Aaron's corporate account was garnished in the amount of $38,784 in order to pay down the arrearage owed on his child support and alimony obligations. Aaron indicated that after the garnishment, he moved his corporate account to a different bank.

Aaron testified that the reason he was unable to pay his child support and alimony obligations was because of a significant "downturn" in his financial circumstances since the entry of the decree. In July 2018, at the time the decree was entered, Aaron owned and operated his own chiropractic practice, NCA, Inc. He had been a licensed chiropractor since 2007. Aaron's 2016 tax returns, which were the most recent tax returns available to him in July 2018, demonstrated that Aaron had reported adjusted gross income of $200,038 (or approximately $16,670 per month) and that NCA, Inc. had gross sales of $389,996. Aaron's 2017 tax returns, which were filed shortly after July 2018, demonstrated that Aaron reported adjusted gross income of $171,409 (or approximately $14,284 per month) and that NCA, Inc. had gross sales of $366,317.

Aaron testified at the modification trial that even before the decree was entered in July 2018, he was aware that his business was in somewhat of a decline, but he believed that things would turn around. Aaron testified that his financial situation did not improve, however. In fact, Aaron indicated that almost immediately after the decree was entered in July 2018, his business suffered a further "downturn." He attributed this downturn to changes in the insurance industry, losing patients who were mutual acquaintances of he and Lisa after their divorce, and him not being "fully present" due to personal issues.

To support his claim that his business, and thus his finances, had dramatically declined after the entry of the decree in July 2018, Aaron testified that he earned gross taxable income of $111,000 in 2018. In his brief Aaron references his individual 2018 tax return in support of his argument. He also referred to it in his testimony. However, our review of the record reveals that his individual tax return for that year was not received into the evidence. A copy of NCA, Inc.'s 2018 tax return is included in our record. That return reflects that Aaron's business had gross sales of $247,973 that year. At the time of the modification trial, Aaron had not yet filed his 2019 tax returns. However, an exhibit offered into evidence during the trial indicated the profit and losses incurred by NCA, Inc. during 2019. That document indicated that the business had earned $344,464 in gross sales. During his trial testimony, Aaron indicated that he was unsure of the accuracy of the profit and loss statement, as he had not yet had a chance to go over the numbers with his accountant. He did indicate his belief that $70,000 of the gross sales was attributable to a loan he had taken out to pay an IRS debt, which he deposited in his corporate account.

Despite Aaron's testimony that his financial circumstances had declined since the entry of the July 2018 decree, he testified that his monthly expenses at the time of the modification trial were very similar to his monthly expenses in July 2018. He indicated that he has had to make "quite a few" changes to his lifestyle as a result of his financial circumstances. Aaron also specifically testified that he had remained current on all of his monthly living expenses, with the exception of his child support and alimony obligations. He indicated that his new wife has been able to help with the family's expenses. However, her tax return from 2018 reflected that she had earned only $2,000 in income.

- 3 -

Contrary to Aaron's testimony, other evidence revealed that Aaron's monthly expenditures have actually increased since July 2018. Aaron testified that since July 2018, he had purchased a new home for his new wife and her three children to reside in with him. This purchase increased his monthly mortgage payment by $300. In order to make the downpayment on his new home, Aaron cashed in his children's college savings accounts. In addition to purchasing a new home, Aaron and his current wife purchased a new vehicle for her to drive. Aaron makes monthly payments of $613 for this vehicle. He helped to pay for his wedding in June 2019, which he testified cost $1,800, and paid for his current wife's wedding ring. Aaron also belongs to a country club and pays for an annual membership. Since July 2018, Aaron and his current wife have taken multiple vacations to North Carolina, Utah, Florida, Nashville, and Kansas City. Aaron explained that some of these trips were primarily paid for by his father-in-law. Aaron also admitted that he often used his corporate account for personal expenses. According to his accountant's 2019 profit and loss statement for NCA, Inc., Aaron used a total of $187,100 from his corporate account for personal expenses, including more than $30,000 for mortgage payments.

Aaron testified that he has incurred $17,400 in attorney fees. He has kept current on paying these fees by using credit cards and borrowing money from other sources. Aaron denied ever using credit cards or borrowing money in order to pay his child support or alimony obligations.

Aaron testified that by the time of the modification trial in March 2020, his financial circumstances had become even more dire. In January, Aaron's chiropractic license was revoked rendering him unable to continue his practice. Aaron indicated that he may be able to apply for reinstatement of his license in January 2022.

During his direct examination, Aaron testified that he was not given any notice of the revocation proceedings that had been filed against him, nor was he ever made aware of the specific allegations which supported revocation of his license. However, during cross-examination, Aaron admitted that he had previously reviewed a petition for disciplinary action which had been filed in April 2019 and the findings of fact and order issued by the Department of Health and Human Services (the Department) on January 7, 2020. Aaron then testified that the specific allegations against him involved insurance claims he submitted after having performed chiropractic treatment for his new wife and her three children. The insurance company questioned the validity of these claims. Aaron indicated that he spoke with an investigator from the Department who asked him to produce the medical records to substantiate the treatment given to his wife and her three children. Aaron did not produce these records. Ultimately, his license was revoked because he failed to provide the requested medical records and cooperate with the Department's investigation. Aaron testified that he did not understand the severity of the situation because the investigator did not follow up on the request for the records or ask to interview Aaron. Aaron indicated he never followed up on the investigation.

Aaron testified that by March 2020, he was living off of previously unpaid collectibles from his chiropractic practice. However, these funds were about to run out. Aaron indicated he had recently applied for a few different jobs, but had not yet gained employment. He indicated that he had withdrawn all of the funds from his retirement account, which totaled over $70,000. However, he admitted that he had started depleting his retirement account in February 2017. Aaron testified that he had no savings, especially after the entirety of his corporate account was garnished in December 2019.

Aaron informed the district court that he was simply not capable of paying the currently ordered amount of child support and alimony. He indicated that the court should consider the decline in his chiropractic business and his license revocation as material changes in circumstances which warranted a change to his child support and alimony obligations. He proposed that his child support be recalculated in accordance with his 2018 income of $111,000. According to his calculations, he should be paying only $524 a month in child support rather than the $2,000 that was previously ordered. Alternatively, he asked the district court to calculate his child support obligation based upon an income of $80,000 to $100,000, as this was the range of salaries for the jobs he had applied for.

Lisa also testified about her financial circumstances. During the parties' marriage, Lisa did not work outside of the home. After the parties separated, Lisa started her own interior decorating business. In July 2018, when the decree was entered, Lisa was earning a monthly income of approximately $2,865. In 2019, Lisa's gross business income was $31,321, or approximately $2,610 per month. Lisa testified that she typically works 40 to 60 hours per week at her interior design business and that she fully intends to make her business successful over time.

At the time of the modification trial, Lisa was renting a home which was owned by her parents. The home was located somewhat near the marital residence, as Lisa wanted the children to be able to attend the same school after the parties' divorce. Lisa testified that she was unable to purchase that home, or any other home, because she is unable to obtain a loan due to her financial circumstances.

Lisa offered an exhibit which showed her current monthly expenses. Those expenses total $7,283 per month. Because Aaron has not been paying child support or alimony, Lisa has been unable to afford many of her monthly expenses. She testified that she has had to "do without" certain things and has simply had to change her lifestyle. In contrast, Lisa pointed out that in 2019, Aaron had paid more than $6,000 toward his country club membership.

Lisa testified that because Aaron had not been paying child support or alimony, that she has borrowed money from her parents in order to pay for certain expenses. In fact, in December 2019, when Lisa received a total of $38,784 from the garnishment of Aaron's corporate account, she repaid a loan from her parents in the amount of $32,600. Lisa testified that if Aaron were to start paying child support and alimony on a monthly basis, it would "significantly change her life."

During her testimony, Lisa offered into evidence an attorney fee affidavit which indicated that she had incurred $5,875 in attorney fees in defending the modification action. Lisa testified to her belief that Aaron's complaint for modification was frivolous and that, as a result, he should be ordered to pay at least $5,000 toward her attorney fees.

Following the trial, the district court entered an order denying Aaron's complaint to modify his child support and alimony obligations. The court found that Aaron had failed to prove that his chiropractic business had suffered any downturn since the entry of the July 2018 decree. The court indicated that, to the contrary, the evidence presented at trial "shows [Aaron] is living a lifestyle that reflects he was generating significantly more income, through his business, than the income shown on the financial records received into evidence." The district court also found that Aaron could not base his request to reduce his obligations on the fact that he lost his chiropractor's license since his own bad actions led to the revocation. The district court ultimately concluded that Aaron had not sufficiently proven that a material change of circumstances had occurred since the entry

of the decree of dissolution which would warrant a reduction in his child support or alimony obligation. The court found that Aaron's complaint was filed in bad faith and that, accordingly, Aaron should pay $5,875 to Lisa for the attorney fees she incurred as a result of Aaron's complaint for modification. The court indicated that all other relief requested by either party was denied.

Aaron appeals from the district court's order.

## ASSIGNMENTS OF ERROR

Aaron claims that the district court erred by (1) allowing into evidence over his hearsay objection documentation regarding the revocation of his chiropractic license, (2) finding no material change in circumstances justifying a change to child support and not reducing that obligation in accordance with the Nebraska Child Support Guidelines, (3) finding no good cause justifying a change in alimony, and (4) finding his complaint for modification to be frivolous and, as a result, ordering him to pay Lisa's attorney fees.

## STANDARD OF REVIEW

Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds. *Pantano v. American Blue Ribbon Holdings*, 303 Neb. 156, 927 N.W.2d 357 (2019).

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Simpson v. Simpson*, 275 Neb. 152, 744 N.W.2d 710 (2008). A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

In an action involving a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Moore v. Moore*, 302 Neb. 588, 924 N.W.2d 314 (2019).

## ANALYSIS

*Admission of Evidence Regarding Revocation of Chiropractic License.*

During Lisa's cross-examination of Aaron, she offered into evidence two documents from the Department: a petition for disciplinary action filed against Aaron in April 2019 (exhibit 1) and an order issued by the Department on January 7, 2020, which revoked Aaron's chiropractic license (exhibit 2). These two documents purported to explain the circumstances surrounding the revocation of Aaron's chiropractic license. Aaron objected to the admission of these exhibits on the basis of hearsay. The district court overruled Aaron's hearsay objection and received the exhibits into evidence.

After the exhibits were received into evidence, Lisa questioned Aaron regarding the reason for his license revocation. Upon these questions, Aaron testified that, ultimately, his license was revoked because he failed to cooperate with the Department's investigation into multiple insurance claims he submitted for chiropractic treatment he provided to his current wife and her three

children during 2016 and 2017. Aaron admitted that he had failed to provide any of the medical records requested by a Department investigator to substantiate the legitimacy of these insurance claims.

On appeal, Aaron argues that the district court erred in receiving into evidence exhibits 1 and 2 because the exhibits clearly contained hearsay. He further alleges that the district court then determined that his loss of license was not a material change in circumstances which warranted a modification of his obligations based solely upon the hearsay contained within those documents. Ultimately, we determine that we need not decide whether the admission of exhibits 1 and 2 into evidence constituted error.

First, we note that before and after the court received the exhibits into evidence, Aaron testified as to his personal knowledge of the circumstances surrounding the revocation of his chiropractic license. In addition, Aaron also submitted into evidence a document from the Department which "verified" the revocation of his chiropractic license. Accordingly, most of the pertinent information contained in the exhibits offered by Lisa was cumulative to Aaron's testimony and documentary evidence. Even if the admission of exhibits 1 and 2 was erroneous, the erroneous admission of evidence is harmless error and does not require reversal if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact. See, e.g., *Worth v. Kolbeck*, 273 Neb. 163, 728 N.W.2d 282 (2007).

Second, at times during the trial, Aaron testified that the revocation of his chiropractic license was not the basis for his assertion that a material change in circumstances had occurred warranting a modification of his child support and alimony. In fact, in Aaron's complaint for modification, he did not allege the revocation of his license as a material change in his circumstances, despite the petition for disciplinary action having been filed by the Department 3 months prior to Aaron filing his complaint. Aaron did not file an amended complaint after his license was definitively revoked. And, in his brief on appeal, Aaron appears to have abandoned any assertion he made during his trial testimony that the revocation of his chiropractic license and subsequent unemployment constituted a material change in circumstances which warranted a modification of his child support and alimony obligations. Instead, Aaron affirmatively asserts that the sole basis for his request for a modification of his obligations is the reduction in his income which occurred from the time the decree was entered in July 2018 through the time he filed his complaint for modification in July 2019. Because Aaron indicates that we should not consider his license revocation in our review of the district court's decision to deny his complaint for modification, exhibits 1 and 2 are simply not relevant to our analysis. As such, we simply do not consider these exhibits in our review of the district court's decision to deny Aaron's request for modification on the basis of a reduction in his income between July 2018 and July 2019.

*Child Support.*

In the original decree entered in July 2018, Aaron agreed to pay child support in the amount of $2,000 per month. On appeal, Aaron alleges that the district court abused its discretion in failing to reduce his child support obligation after he demonstrated that his income had suffered a significant reduction from the time the decree was entered in July 2018 through the time he filed his complaint for modification in July 2019. We find no abuse of discretion in the district court's decision to not modify Aaron's child support obligation. The evidence presented at the

modification proceedings supports the district court's factual finding that Aaron had not suffered any significant reduction in his income during the time period from July 2018 through July 2019.

A party seeking to modify a child support order must show a material change in circumstances which (1) occurred subsequent to the entry of the original decree or previous modification and (2) was not contemplated when the decree was entered. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018).

Among the factors to be considered in determining whether a material change of circumstances has occurred are changes in the financial position of the parent obligated to pay support, the needs of the children for whom support is paid, good or bad faith motive of the obligated parent in sustaining a reduction in income, and whether the change is temporary or permanent. *Id*. But, the paramount concern in child support cases, whether in the original proceeding or subsequent modification, remains the best interests of the child. *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009). The party seeking the modification has the burden to produce sufficient proof that a material change of circumstances has occurred that warrants a modification and that the best interests of the child are served thereby. *Fetherkile v. Fetherkile, supra*.

In July 2018, Aaron agreed to pay $2,000 per month in child support. Aaron's individual tax return from 2017 indicates that Aaron earned adjusted gross income of $171,409 during the year immediately prior to agreeing to the child support payments. This equates to a gross monthly income of $14,284. Lisa believed that Aaron's income was actually higher than what was reported on his tax returns based upon their lifestyle during the marriage. Lisa's belief is supported by the record, as Aaron testified that he has routinely utilized money from his corporate account to pay personal expenses. In 2017, Aaron's corporation had gross sales of $366,317. It is not clear how much of these funds were used to pay Aaron's personal expenses. According to Lisa, though, prior to the entry of the decree of dissolution, Aaron was earning a net income of approximately $19,000 per month. To the contrary, Aaron believed that his net monthly income at that time was closer to $8,400. Ultimately, however, Aaron agreed to pay $2,000 in child support in addition to $3,200 in alimony regardless of what his actual monthly income totaled. Given Aaron's agreement, it seems likely that Aaron's actual monthly income was significantly higher than $8,400. If his monthly income was in fact $8,400, he would only have had $3,100 left to pay his own expenses after paying his child support and alimony obligations.

Aaron testified at the modification trial that even before he entered into the agreement regarding child support, he knew that his business was in a bit of a downturn. He testified that he believed things would return to normal and he would be able to pay the agreed upon child support obligation. According to Aaron, business did not improve.

Aaron testified that he earned individual income of only $111,000 in 2018. He did not include in our record a copy of his 2018 individual tax return to substantiate this testimony. The 2018 corporate tax return from NCA, Inc. indicated that his practice had gross sales of $247,973, which is approximately $118,000 less than what was reported on the 2017 corporate tax returns. Aaron attributed this reduction in corporate earnings to numerous factors, including personal issues which affected his ability to work. Aaron did not provide any evidence to indicate the amount of corporate funds he applied to personal expenses during 2018. Accordingly, given the lack of a 2018 individual tax return and the lack of information about additional corporate funds used for

personal expenses, it is difficult to precisely calculate Aaron's 2018 income or assess what difference may exist between his 2017 earnings and his 2018 earnings.

Aaron also failed to present any specific evidence regarding his 2019 income during the modification trial. He did not indicate what his annual income was during that year. He did provide a profit and loss statement for his corporation which had been prepared by his accountant. That statement indicated that in 2019, the business had rebounded. It reflected that the gross sales of his practice totaled $344,464, a change of only $21,853 from the company's 2017 earnings. It appears from the profit and loss statement that Aaron utilized at least $187,100 from these sales to pay personal expenses.

Given Aaron's failure to prove his specific income during the years 2018 and 2019, it is difficult to evaluate whether he suffered a significant loss in his income since the entry of the decree. It is clear, however, that despite any alleged loss in Aaron's income, his lifestyle had not changed at all since July 2018. In fact, Aaron's monthly expenditures actually increased. Since July 2018, Aaron has purchased a new house which has a mortgage payment of $300 more per month than he was paying when the agreed upon decree was entered. He also added a $600 monthly car payment for a vehicle purchased for his current wife. In addition, since July 2018, he has paid for a wedding, his new wife's wedding ring, portions of numerous vacations, and an annual country club membership. Aaron indicated that his other expenditures have remained unchanged since July 2018. Aaron testified that he has remained current on all of his monthly obligations, except for child support and alimony. In fact, Aaron has even been able to make regular payments toward more than $17,000 in incurred attorney fees by using credit cards or borrowing money. In December 2019, despite his purported financial struggles, Aaron's corporate account contained almost $40,000, which was ultimately garnished to pay down his accrued child support and alimony.

Given the evidence presented at the modification trial, we do not find that the district court abused its discretion in determining that Aaron failed to demonstrate any significant decline in his income since July 2018 which would warrant a modification of his child support obligation. Aaron did not present sufficient evidence of his 2018 income and to the extent his 2019 income was provided, his own exhibit indicates income close to what he enjoyed prior to the entry of the decree. He was able to maintain the same lifestyle he was enjoying at the time the decree was entered, and was financially able to increase his monthly mortgage payment and purchase a new vehicle, while at the same time not paying any money toward child support. Essentially, the evidence revealed that Aaron placed all of his other monthly expenditures ahead of his child support obligation. We affirm the district court's decision to deny Aaron's complaint for modification on the basis that his income had declined since the entry of the decree.

*Alimony.*

In the original decree entered in July 2018, Aaron agreed to pay Lisa $3,200 per month in alimony for a period of 60 months. On appeal, Aaron alleges that the district court abused its discretion in failing to reduce or terminate that obligation after he demonstrated that his income had suffered a significant reduction since the entry of the decree. For similar reasons as cited above, we find no abuse of discretion in the district court's decision to not modify Aaron's alimony obligation.

Alimony orders may be modified or revoked for good cause shown. *Metcalf v. Metcalf*, 278 Neb. 258, 769 N.W.2d 386 (2009); Neb. Rev. Stat. § 42-365 (Reissue 2016). Good cause means a material and substantial change in circumstances and depends upon the circumstances of each case. *Metcalf v. Metcalf, supra*. The moving party has the burden of demonstrating a material and substantial change in circumstances which would justify the modification of an alimony award. *Id*.

The district court found that Aaron had simply failed to sufficiently demonstrate any real decline in his income since the entry of the decree. The evidence supports the district court's finding. Not only did Aaron fail to sufficiently prove that his income had actually declined since the entry of the decree, but the evidence presented at the modification trial demonstrated that Aaron consistently maintained the same lifestyle he was enjoying in July 2018. Moreover, as we discussed in more detail above, Aaron was financially able to increase his monthly mortgage payment and purchase a new vehicle, while at the same time not paying any money toward child support or alimony.

Given that Aaron failed to sufficiently prove any real change in his financial circumstances since the entry of the decree in July 2018, we can find no good cause which would warrant a modification to his alimony obligation. We affirm the decision of the district court which denied Aaron's request to reduce or eliminate his alimony obligation on the basis of a reduction in his income between July 2018 and July 2019, and which ordered Aaron to continue to pay alimony to Lisa in the amount of $3,200 per month, as he agreed to do as part of the parties' settlement agreement.

*Attorney Fees.*

In the district court's order, it made a specific finding that Aaron's complaint for modification was filed in bad faith. Based upon this finding, the district court awarded Lisa with attorney fees in the amount of $5,875. On appeal, Aaron challenges the district court's finding that his complaint was frivolous and filed in bad faith, and in thus awarding Lisa with attorney fees. Aaron asserts that he provided sufficient evidence at the modification trial which demonstrated a legitimate change in his income since the entry of the July 2018 decree of dissolution. Upon our review, we affirm the award of attorney fees to Lisa.

Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Moore v. Moore*, 302 Neb. 588, 924 N.W.2d 314 (2019). Neb. Rev. Stat. § 25-824 (Reissue 2016) provides for an order of attorney fees against a party who alleged a claim or defense that the court determined was frivolous, interposed any part of the action solely for delay or harassment, or unnecessarily expanded the proceeding by other improper conduct. In this case, the district court ordered Aaron to pay Lisa attorney fees because the court found that Aaron's complaint for modification was frivolous and brought in bad faith. Ultimately, we need not decide whether Aaron's complaint was frivolous or brought in bad faith. We determine that the district court's award of attorney fees to Lisa is supported on different grounds.

In dissolution cases, as a matter of custom, attorney fees and costs are awarded to prevailing parties. *Moore v. Moore, supra*. The Nebraska Supreme Court has previously indicated that a uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution cases.

*Id.* Here, Lisa prevailed in defending against Aaron's complaint for modification. The decree of dissolution was not modified in any respect and Aaron was ordered to continue paying his child support and alimony obligation which was part of the original decree. Accordingly, we affirm the district court's decision to award Lisa attorney fees on the basis that she was the prevailing party in the modification proceeding. We now consider the amount of attorney fees awarded to Lisa.

In an action involving a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). In awarding attorney fees in a dissolution action, a court shall consider the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. *Id.* The district court awarded Lisa $5,875 in attorney fees, which constituted all of the fees she had incurred in defending against Aaron's complaint for modification. Given Aaron's failure to voluntarily pay any child support or alimony for a significant duration and given the evidence regarding the parties' relative financial circumstances since the entry of the decree, we find no abuse of discretion in the district court's award to Lisa of $5,875 in attorney fees.

CONCLUSION

For the foregoing reasons, we affirm the decision of the district court to deny Aaron's request to modify his child support and alimony obligations. We further affirm the award to Lisa of $5,875 in attorney fees.

AFFIRMED.